**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Peter KARIGIANNIS, Christ Panagiotopoulos and Arthur Panagiotopoulos,
Defendants-Appellants.**

**No. 18056.**

United States Court of Appeals,
Seventh Circuit.

July 8, 1970.

Rehearings Denied Aug. 6, 1970
Certiorari Denied Nov. 9, 1970.
See 91 S.Ct. 143.

Julius Lucius Echeles, Edward J. Calihan, Jr., Chicago, Ill., for defendants-appellants.

Thomas A. Foran, U. S. Atty., Richard Ciecka, Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Michael Siavelis, Asst. U. S. Attys., of counsel.

Before CLARK, Associate Justice, Retired,[1] and CUMMINGS and KERNER, Circuit Judges.

CLARK, Associate Justice, Retired.

Appellants stand convicted of violating 18 U.S.C. § 1952[2] which makes it an offense to travel in interstate commerce to promote extortion. The jury found appellants guilty of travelling from Chicago, Illinois, to Milwaukee, Wisconsin, with intent to extort $2000 from Steve Latson in violation of Ch. 38 of the Illinois Revised Statutes, 16–1. The gist of the offense was that the appellants would refrain from having Latson's "Hollywood Restaurant" in Chicago bombed and burned on payment of the money. On this appeal appellants raise various questions;[3] however, we have concluded that none have merit and affirm the judgments.

I.

We will first describe the parties involved. The principal witness and the victim of the extortionate conduct is Steve Latson who owns the Hollywood Restaurant in Chicago. Appellant Arthur Panagiotopoulos, also known as Panos, is the owner of the Forest Glen Restauarant in Chicago and was for 6½ years a partner of Latson in the restaurant business. Appellant Christ Panagiotopoulos is a brother of Arthur and owns the Medium Rare Steak House in Milwaukee. Appellant Peter Karigiannis owns Pete's Snack Shop in Chicago.

II.

The facts are bizarre. Christ Panos called Latson, who was in Chicago, by telephone from Milwaukee. He told him that he was Arthur Panos' brother and Latson's friend; that Latson's life was in danger; that his Hollywood Restaurant was going to be blown to pieces before ten o'clock that night unless he came to his restaurant in Milwaukee by six p. m.; and that Latson had something to do with burning down a competing restaurant in Chicago, known as Mitchell's, some time previously. Latson told Christ that he could not come because he had no one to take care of his restaurant in his absence.

Upon completion of the call, however, Latson called Arthur Panos at his restaurant in Chicago. He told Arthur of his brother's call, adding: "they think, you know, that I had something to do with the bombing of Mitchell's place." Arthur then told Latson that he had heard something about it in Milwaukee the week previous but did not believe it. He said he would call his brother in Milwaukee and find out "what it is all about." Later Arthur called Latson back and advised that he had called his brother, Christ, and "you had better get ready, we are going to go up there." Latson replied that "he was afraid, I can't go up there and I don't have anybody to leave here." Arthur then told Latson: "If you are not going to go that is your job. I am going to come over and if you desire to go there we will go together."

1. The Honorable Tom C. Clark, Associate Justice, United States Supreme Court, Retired, is sitting by special designation.

2. 18 U.S.C. § 1952 provides: (a) whoever travels in interstate commerce with intent to commit any crime of violence (2) to further any unlawful activity shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
(b) As used in this section "unlawful activity" means "(2) extortion * * * in violation of the laws of the State in which committed or of the United States."

3. The claimed errors include: (1) the relevant Illinois statute does not prohibit extortion; (2) the indictment failed to allege the extortion attempt to be a felony or misdemeanor; (3) the evidence against Arthur Panos was insufficient; (4) the judge and prosecutor made prejudicial remarks about appellants before the jury; (5) the court refused to admit into evidence a letter from a bank summarizing appellant Karigiannis' loan record; and (6) certain rebuttal evidence of the government exceeded impeachment bounds.

About 4:30 on the same day, Arthur Panos came by Latson's restaurant and they drove to Christ Panos' restaurant in Milwaukee. Conversations then took place between Latson, the Panos brothers and Peter Karigiannis, during which Karigiannis accused Latson of having had Mitchell's restaurant bombed and burned; that Mitchell's owner had offered "them" $7000 to bomb and burn Latson's place. The first demand of Peter was for $7000 which later was reduced to $5000 and finally the $2000 payment was agreed upon to prevent the destruction of the restaurant. The money was to be paid to Peter Karigiannis on the following Friday at Arthur Panos' restaurant in Chicago. Nine agents of the Federal Bureau of Investigation carried on a surveillance of the restaurant and surroundings before, during and after this meeting.

After the meeting Arthur Panos and Latson returned to Chicago. On the following day Latson obtained the $2000 from a bank and took it to the FBI where it was identified, marked and placed in a white envelope for delivery by Latson to Peter on the next day. The payment was made on schedule and Peter was arrested by the agents, who were on hand at the time and seized the envelope before it was opened.

### III.

The Panos brothers are represented by separate counsel and raise different questions from those raised by Peter Karigiannis. However, we shall consider the questions as if raised together:

■ 1. At the outset appellants contend that Illinois does not have a statute prohibiting extortion. It is true that Chapter 38, § 16–1[4] is written in terms of "theft" which is committed where one (c) obtains by threat control over property of the owner. But the Supreme Court, through Chief Justice Warren, has foreclosed appellants' claim.

In United States v. Nardello, 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487 (1969), the Chief Justice laid down the test under § 1952 to be "whether the particular State involved prohibits the extortionate activity charged." At 295, 89 S.Ct. at 539. The Congress, the Court held, did not intend to restrict the coverage of the "Travel Act" by defining extortion with reference to state labels. It is sufficient if the act complained of is "prohibited by state law which would be generically classified as extortion * * *", at 290, 89 S.Ct. at 536, and, therefore, encompassed in § 1952. We hold that Illinois Ch. 38, § 16–1 is such a law. Also see United States v. Hughes, 411 F.2d 461 (2d Cir. 1969).

■ 2. It is further claimed that the indictment is insufficient because it failed to distinguish the unlawful extortion as being either a felony or a misdemeanor. However, the gravamen of a charge under § 1952 is the violation of federal law and "[r]eference to state law is necessary only to identify the type of unlawful activity in which the defendants intended to engage." United States v. Rizzo, 418 F.2d 71, 74 (7th Cir. 1969). The offense, as the court pointed out, "is the use of an interstate facility, with intent to promote or further an unlawful activity in violation of state law." Id. Indeed, the court held that proof that a state law had actually been violated was not a necessary element of the offense. Id. at 80. Appellants confuse the offense with those where the value of the property stolen is an essential element of the crime, a requirement not necessary here since the amount of money involved is irrelevant. Cf. United States v. Pearce, 275 F.2d 318, 324 (7th Cir. 1960), and United States v. Gordon, 253 F.2d 177 (7th Cir. 1958).

■ 3. Appellant Arthur Panos urges that the evidence against him was insufficient to support his conviction.

---

4. Chapter 38, Illinois Revised Statutes, Section 16–1: "A person commits theft when he knowingly: * * * c) Obtains by threat control over property of the owner."

He did not testify at the trial; however, he made sworn statements to Special Agents of the FBI which were before the jury. On careful review of all of the evidence considered in a light more favorable to the government, United States v. Pinna, 229 F.2d 216 (7th Cir. 1956), we have concluded that it was sufficient. The evidence against Arthur was largely circumstantial and created credibility problems for the jury to resolve. It believed the government's witnesses. Questions of credibility have no bearing on the insufficiency of the evidence as a whole. United States v. Wroblewski, 105 F.2d 444, 449 (7th Cir. 1939), and are not for the reviewing court's decision. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Miles, 401 F.2d 65 (7th Cir. 1968); United States v. Coduto, 284 F.2d 464, 466 (7th Cir. 1960).

■ In addition to the evidence heretofore related, other testimony involved Arthur Panos directly in the extortion plot. It was he to whom Christ Panos referred on his initial call to Latson that initiated the extortion conference; it was he who suggested and arranged that Latson go with him to Milwaukee to the conference; once there and in the presence of his brother and Peter Karigiannis, it was he who heard threats made again and again to Latson; however, he never objected but on the contrary when Peter demanded $5000, Arthur said, "I know Steve for a long time, he was my partner. He might not have that kind of money now. * * *"; it was he who alarmed Latson while the conference was going on by saying to him privately, "If they ask you to go in any other room, don't go. Stay over here where I can see you because I don't know what is going to happen to you"; it was he who suggested to Latson that if the latter was afraid to tell Peter Karigiannis whose business he (Latson) wanted blown up that Latson should give him, Arthur Panos, the name; and, on the return trip to Chicago after the conference it was he who told Latson he had better

do what he was told [pay the $2000]. Finally, it was he who called long distance to his brother Christ in Milwaukee just 13 minutes after Peter Karigiannis was arrested at his premises. And we note also that he had no objection to the extortion money being paid over at his restaurant. It is for the jury, not for us, to weigh this testimony along with that of the Agents of the Bureau that Arthur Panos told them four different versions of the extortion plot. False exculpatory statements may, of course, be considered by the jury in determining guilt, Wilson v. United States, 162 U.S. 613, 620–621, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); United States v. Riso, 405 F.2d 134 (7th Cir. 1968). He first stated that at no time was he informed by Latson of any threat; he could not recall any of the conversations between his brother Christ, Peter Karigiannis, Latson and himself at the Medium Rare Steak House in Milwaukee; however, he did recall that no threats were made to Latson; and, finally, though he was aware of the $2000 payment, he was unaware of why it was being paid. Again and again the record repeats exclamations by the Panos brothers that Latson is "our friend * * * my brother's ex-partner * * * my partner * * * I know for a long time"; still they failed him completely. Indeed, both contributed much to the effectuation of the plot. The record speaks out beyond a reasonable doubt to this effect.

■ 4. The remainder of the points raised go to alleged prejudicial remarks by the prosecutor or the judge and the admissibility of evidence. As to the former in some instances no objection was made at the time; in others the court struck out the statements and instructed the jury not to consider them. In any event we find no statements of such a prejudicial nature that would require a new trial. As to the evidence question, appellants claim error over the refusal of the court to admit into evidence a letter from the Commercial Bank of Chicago to Peter Karigiannis summarizing his loan record with the

bank. Obviously, the letter was not the best evidence to prove that Peter had at one time borrowed $2100 from the bank. United States v. Ross, 321 F.2d 61, 70 (2d Cir. 1963). The original records should have been offered. Indeed, the judge told counsel that he was "at liberty to bring in the books of record if you wish to do so." Strangely, counsel claimed this remark was an invitation to produce and, therefore, prejudicial. To us it merely indicated the proper approach the appellant might have taken. In any event the defense that the $2000 extortion payment was in fact the repayment of an earlier loan to Latson was before the jury in other evidence and was rejected by it. Nor do we find appellants' challenges of error to the admissibility of certain rebuttal evidence to have merit and they are denied.

The judgement is

Affirmed.