**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Anthony J. SALINAS and Billy W. Davis, Defendants-Appellees.**

**No. 76–3398.**

United States Court of Appeals, Fifth Circuit.

Dec. 9, 1977.

LeRoy Morgan Jahn, Asst. U. S. Atty., John E. Clark, U. S. Atty., John M. Pinckney, III, Trial Atty., San Antonio, Tex., Edward C. Weiner, Sp. Atty., U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Jack Paul Leon, Mayo J. Galindo, San Antonio, Tex., for Billy W. Davis.

Gary Howard, Charles D. Butts, Fred A. Semaan, San Antonio, Tex., for Anthony J. Salinas.

Before WISDOM, GEWIN and AINSWORTH, Circuit Judges.

WISDOM, Circuit Judge:

This appeal presents an issue of statutory construction: whether 18 U.S.C. § 1961(6), defining an unlawful debt as one incurred in violation of state laws against gambling and the business of gambling, applies in a state that forbids gambling but has no specific statutory proscription of the business of gambling. We believe that § 1961(6) applies, and reverse the district court's judgment.

This case arises out of an appeal by the government from dismissal of one count of an indictment. The dismissed count charged Anthony J. Salinas and Billy W. Davis, defendants/appellees, with collecting unlawful debts for an enterprise engaged in interstate commerce in violation of 18 U.S.C. § 1962(c).[1] For the purpose of § 1962(c), " 'unlawful debt' means a debt (A) incurred or contracted in gambling activity which was in violation of the law of . . . a State . . ., and (B) which was incurred in connection with the business of gambling in violation of the law of . . . a State . . .." 18 U.S.C. § 1961(6).[2] On appeal, Salinas and Davis contend that they may be prosecuted under § 1962(c) only if their activities violated state laws specifically prohibiting both gambling and the business of gambling. We hold that in a state where gambling is illegal, the business of gambling is also illegal; therefore no specific statutory ban of the business of gambling is necessary for a prosecution under the statute.

I

The dismissed count of the indictment alleges that from 1971 to 1974 Salinas was engaged in the business of gambling. Davis was a vice-president of the Main Bank and Trust of San Antonio, Texas, and was assigned to its Installment Loan Department. Davis allegedly knew that Salinas was in the business of gambling. The indictment charges that Salinas brought people who owed him gambling debts to Davis to apply for loans. Davis allegedly granted the loans without asking the recipients their purpose in seeking the loan and without requiring them to fill out loan applications. Salinas cosigned or pledged collateral for these loans. The government alleges that proceeds of the loans went to pay gambling debts to Salinas. The loans were later repaid.

Texas Penal Code § 47.03 proscribes gambling.[3] That statute became effective Jan-

---

1. 18 U.S.C. § 1962(c) provides:
    It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

2. 18 U.S.C. § 1961(6) provides in full:
    (6) "unlawful debt" means a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling

in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate;

3. Texas Penal Code § 47.03 provides:
    Gambling Promotion
    (a) A person commits an offense if he intentionally or knowingly does any of the following acts:
    (1) operates or participates in the earnings of a gambling place;
    (2) receives, records, or forwards a bet or offer to bet;
    (3) for gain, becomes a custodian of anything of value bet or offered to be bet;
    (4) sells chances on the partial or final result of or on the margin of victory in any

uary 1, 1974. Before that date the only reference to the business of gambling was a prohibition of "the business of book making",[4] which, of course, is narrower in scope than the business of gambling. Tex.Penal Code, Art. 652a (repealed January 1, 1974). Since 1974 there has been no specific use of the term "business" in any of the anti-gambling laws of Texas.

## II

The question whether a prosecution under § 1962(c) for the collection of illegal gambling debts may be maintained in a state that forbids gambling but that does not specifically bar the business of gambling is apparently one of first impression. Congress did not define the term "business

of gambling" in § 1961(6). It did, however, provide that content should be given to the term by resort to state law.

Other federal anti-racketeering statutes make reference to state law. Courts construing the racketeering statutes have found that the references to state law serve a definitional purpose, to identify generally the kind of activity made illegal by the federal statute.

In *United States v. Nardello*, 1969, 393 U.S. 286, 89 S.Ct. 534, 21 L.Ed.2d 487, the Supreme Court construed the Travel Act, 18 U.S.C. § 1952.[5] Section 1952 bars travel with the intent to carry out "extortion . . . in violation of the laws of the State in which committed or of the United States".

---

game or contest or on the performance of any participant in any game or contest or on the result of any political nomination, appointment, or election or on the degree of success of any nominee, appointee, or candidate; or

(5) for gain, sets up or promotes any lottery or sells or offers to sell or knowingly possesses for transfer, or transfers any card, stub, ticket, check, or other device designed to serve as evidence of participation in any lottery.

(b) An offense under this section is a felony of the third degree.

4. Former Texas Penal Code Art. 652a provided:
Art. 652a. Bookmaking; definition; penalty
Accepting or placing wagers; punishment
Section 1. Any person who takes or accepts or places for another a bet or wager of money or anything of value on a horse race, dog race, automobile race, motorcycle race or any other race of any kind whatsoever, football game, baseball game, athletic contest or sports event of whatsoever kind or character; or any person who offers to take or accept or place for another any such bet or wager; or any person who as an agent, servant or employee or otherwise, aids or encourages another to take or accept or place any such bet or wager; or any person who directly or indirectly authorizes, aids or encourages any agent, servant or employee or other person to take or accept or place or transmit any such bet or wager shall be guilty of book making and upon conviction be punished by confinement in the State Penitentiary for any term of years not less than one (1) nor more than five (5) or by confinement in the county jail for not less than ten (10) days nor more than one (1) year and by a fine of not less than One Hundred ($100.00) Dollars nor more than One Thousand ($1,000.00) Dollars.

Sec. 2. Any person who shall within a period of one (1) year next preceding the filing of

the indictment commit as many as three (3) acts which are prohibited under Section 1 of this Act shall be guilty of engaging in the business of book making and upon conviction shall be punished as provided in Section 1 of this act.

5. 18 U.S.C. § 1952 provides:

*Interstate and foreign travel or transportation in aid of racketeering enterprises*

(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

(c) Investigations of violations under this section involving liquor or narcotics shall be conducted under the supervision of the Secretary of the Treasury.

The defendants in *Nardello* allegedly lured their victims into compromising homosexual situations and threatened them with exposure if they did not pay the defendants. Pennsylvania law characterized such activity as "blackmail" rather than "extortion". Nevertheless, the Supreme Court allowed the prosecution to proceed. The Court found that "the inquiry is not the manner in which States classify their criminal prohibitions but whether the particular State involved prohibits the extortionate activity charged". 393 U.S. at 295, 89 S.Ct. at 539. The Court found that there was great variance among the states in the terms used to describe and to forbid extortion, and found that Congress could not have intended to apply the Travel Act only in states that used a particular term. *Nardello* held that a defendant may be found guilty under the Travel Act if his conduct included "acts prohibited by State law which would be generically classified as extortionate". *Id.* at 290, 89 S.Ct. at 536. Thus, the nomenclature in the state statute need not match that of § 1952 precisely.

■ Although *Nardello* construed a different statute, its logic is persuasive here. We must look not to "the manner in which States classify their criminal prohibitions but whether the particular State involved prohibits the . . . activity charged". 393 U.S. at 295, 89 S.Ct. at 539.

■ States making gambling illegal differentiate among levels of gambling activity. First, a state may enact a statute forbidding gambling and may enact a supplementary statute, perhaps with more severe penalties, against extensive gambling activity or against "commercial gambling".

Second, a state may have a single statute, and may seek to proceed against extensive gambling activity by charging numerous violations of the same offense. The latter situation prevails in Texas, where no current statute expressly forbids the business of gambling.[6] The particular means a state chooses to deal with the problem of commercial gambling, like the choice between the words "extortion" and "bribery" in *Nardello*, should not control the applicable federal anti-gambling law.

■ The defendants do not seriously contend that the business of gambling is legal in Texas. If a single act of gambling is illegal, then gambling as a means of livelihood or as an ongoing commercial operation must be illegal as well. The defendants seek to seize upon the state's not classifying gambling as precisely as does the federal statute. But it was not the intent of Congress to attack gambling only in states that classify gambling along the federal model. The reason for the Congressional conjunctive requirement that a debt be incurred in connection with gambling and with the business of gambling was that it sought to punish only large scale gambling operations involving "organized crime" as contrasted with small time gambling. Pub.L. 91–452, § 1, Oct. 15, 1970.[7]

This Court has extended the logic of the *Nardello* case to the language of other provisions of the federal anti-racketeering statutes. In *United States v. Revel*, 5 Cir. 1974, 493 F.2d 1, we faced the question whether the federal or the state statute of limitation applies in a prosecution under 18 U.S.C. § 1955.[8] That section, like §§ 1961 & 1962,

6. The single statute situation also applies to the alleged violations that occurred prior to January 1, 1974. The saving provision of the 1974 Penal Code provides that "Conduct constituting an offense under existing law that is repealed by this Act and that does not constitute an offense under this Act may not be prosecuted after the effective date of this Act." Preliminary Enacting Legislation, Acts 1973, 63d Leg., p. 883, ch. 399, § 6(b); V.T.C.S. Penal Code, 1 Penal 3. No provision parallel to the business of bookmaking statute, former Texas Penal Code Art. 652a(2), quoted in note 4, was

carried forward into the new Penal Code. Therefore, no federal prosecution can be based on the repealed statute. *Cf. United States v. Sharpnack*, 1958, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282.

7. Congress also provided that "The provisions of this title [18 U.S.C. §§ 1961–1968] shall be liberally construed to effectuate its remedial purposes." Pub.L. 91–452, § 904(a).

8. Section 1955(a)–(b) provides:
   *Prohibition of illegal gambling businesses*

was enacted as part of the Organized Crime Control Act of 1970, Pub.L. 91–452, 84 Stat. 922. It forbids the operation of an "illegal gambling business". It defines "illegal gambling business" as one involving five or more persons, operating for over thirty days or grossing at least $2,000 on one day, in "violation of the law of a State or political subdivision in which it is conducted". 18 U.S.C. § 1955(b)(1). We cited *Nardello* and held: "Just as in 18 U.S.C. § 1952, the so-called Travel Act, the reference to state law in the federal statute is for the purpose of defining the *conduct* prohibited and for the purpose of supplementing, rather than pre-empting, state gambling laws." *Id.* at 2–3 (emphasis in original) (footnote omitted). We decided that we should use "federal standards in enforcing the federal law" and we held that the defendant could be convicted even though the applicable state limitation period had expired. *Id.* at 3. *See also United States v. Brown*, 5 Cir. 1977, 555 F.2d 407, 418 n. 22.

In *United States v. Crockett*, 5 Cir. 1975, 506 F.2d 759, another § 1955 prosecution, we found that the trial judge did not err in failing to give the jury the Georgia statutory language making it illegal to conduct a gambling business in the state. We found no error in the trial court's statement that "the law of the state of Georgia prohibits commercial gambling enterprises" without further explanation. *Id.* at 761. We found no need for recourse to the specific language of the state statute. *See also United States v. Brown*, 5 Cir. 1977, 555 F.2d 407, 418 n. 22; *United States v. Conway*, 5 Cir. 1975, 507 F.2d 1047; *United States v. Cerone*, 7 Cir. 1971, 452 F.2d 274, 287, *cert.*

denied 1972, 405 U.S. 964, 92 S.Ct. 1168, 31 L.Ed.2d 240; *United States v. Rizzo*, 7 Cir. 1969, 418 F.2d 71, 80, *cert. denied* 1970, 397 U.S. 967, 90 S.Ct. 1006, 25 L.Ed.2d 260; *United States v. Karigiannis*, 7 Cir. 1970, 430 F.2d 148, 150, *cert. denied* 1970 *sub nom. Panagitopoulos v. United States*, 400 U.S. 904, 91 S.Ct. 143, 27 L.Ed.2d 141.

*United States v. Frumento*, 3 Cir. 1977, 563 F.2d 1083, is similar to the instant case. There, the defendants were charged under the same statute, 18 U.S.C. § 1962(c).[9] They were charged under the racketeering activity provisions of that statute. Section 1961(1) defines "racketeering activity" to include "bribery [and] extortion . . . chargeable under State law and punishable by imprisonment for more than one year". The court upheld the defendants' conviction even though they had been acquitted in state court "on the very state law charges which formed the basis of their indictment under 18 U.S.C. § 1961 *et seq.*". The Court found that "The state offenses referred to in the federal act are definitional only". 563 F.2d at 1087. The Court said:

> The gravamen of section 1962 is a violation of federal law and "reference to state law is necessary only to identify the type of unlawful activity in which the defendant intended to engage." *United States v. Cerone*, 452 F.2d 274, 287 (7th Cir. 1971), quoting Mr. Justice Clark in *United States v. Karigiannis*, 430 F.2d 148, 150 (7th Cir.), *cert. denied sub nom. Panagitopoulos v. United States*, 400 U.S. 904, [91 S.Ct. 143, 27 L.Ed.2d 141] (1970).

563 F.2d at 1087.

In another case, the Third Circuit followed our holding in *Revel* that the federal

---

(a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

(b) As used in this section—

(1) "illegal gambling business" means a gambling business which—

(i) is a violation of the law of a State or political subdivision in which it is conducted;

(ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

(iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

(2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

(3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

**9.** Quoted in note 1.

statute of limitations, not the statute of limitations of the state statute used to identify the activity proscribed by federal law, applies in a federal prosecution under the Organized Crime Control Act of 1970. *United States v. Forsythe*, 3 Cir. 1977, 560 F.2d 1127. The Court stated:

> RICO [the Racketeer Influenced and Corrupt Organizations Act, Title IX of the Organized Crime Control Act of 1970, Chapter 96 of Title 18 U.S.C. §§ 1961–1968] is a federal law proscribing various racketeering acts which have an effect on interstate or foreign commerce. Certain of those racketeering, or predicate acts violate state law and RICO incorporates the elements of those state offenses for definitional purposes. State law offenses are not the gravamen of RICO offenses. RICO was not designed to punish state law violations; it was designed to punish the impact on commerce caused by conduct which meets the statute's definition of racketeering activity. To interpret state law offenses to have more than a definitional purpose would be contrary to the legislative intent of Congress and existing state law.

560 F.2d at 1135. *See also id.* at 1136–38.

These cases buttress our conclusion that the trial court erred in dismissing the debt collection count. The references to state law in § 1961(6) are definitional only: violation of § 1962(c) may occur in a state that has no specific ban of the "business of gambling".

REVERSED AND REMANDED.