# United States Court of Appeals
## For the First Circuit

No. 03-1391

SAMUEL CANNAROZZI AND ERICA CANNAROZZI,

Plaintiffs, Appellants,

v.

PETER FIUMARA,

Defendant, Appellee,

STEVEN J. MARULLO; BURNS & LEVINSON, LLP;
ATTORNEYS LIABILITY ASSURANCE SOCIETY, INC.,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Robert E. Keeton, U.S. District Judge]

Before

Torruella, Circuit Judge,
Lourie,[*] Circuit Judge,
and Howard, Circuit Judge.

Robert W. Walker, with whom Walker and Associates was on brief, for appellants.
Richard B. Villiotte, with whom James J. Cipoletta, was on brief, for appellee.

June 2, 2004

---

[*] Of the Federal Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.  This case requires us to interpret a provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO" or the "Act"), 18 U.S.C. § 1962(b), which incorporates state law, here the Massachusetts criminal usury statute.  Samuel Cannarozzi sued Peter Fiumara alleging the latter collected from him several "unlawful debts" in violation of RICO. Because the loans did not offend the Massachusetts criminal usury statute, the district court correctly concluded the debts were not "unlawful" within the meaning of RICO and properly granted Fiumara's motion for summary judgment.

## I.  **Factual Background**

Samuel Cannarozzi is an on-again off-again compulsive gambler.[1]  A series of football gambling losses indebted him to Joey Yerardi in 1988; in a short period the debt reached $22,000, beyond his capacity to deliver the agreed upon weekly payments. Cannarozzi contacted attorney Steven Marullo who referred Cannarozzi to Marullo's client, Peter Fiumara.

Early in 1991, Cannarozzi met with Fiumara at Fiumara's men's nightclub in Revere, Massachusetts.  Fiumara proposed to buy out Cannarozzi's debt to Yerardi in exchange for a promise to repay him the sum at 3% per week.  Cannarozzi began weekly payments, but

---

[1]  As we review a grant of Fiumara's motion for summary judgment, the facts are narrated in the light most favorable to Cannarozzi's claims.  González-Pérez v. Hosp. Interamericano de Medicina Avanzada, 355 F.3d 1, 3 (1st Cir. 2004).

stopped when he had repaid $40,000 because of a federal investigation into Yerardi and Fiumara and the advice of a federal prosecutor who told him that "the book on these individuals is far from closed."[2]  Marullo insisted that Cannarozzi continue to make payments.

In the following years, Cannarozzi seems to have kept his gambling under control, and he built up ownership interests in two restaurants (with Marullo as his counsel).  When the opportunity arose in March 1996 for Cannarozzi to acquire an additional restaurant interest for $30,000, he actually returned to Fiumara -- on Marullo's recommendation -- to ask for financing.  Fiumara agreed to loan Cannarozzi the $30,000, and the two executed two $15,000 promissory notes, drafted by Marullo, and dated April 15, 1996 and June 10, 1996.  The funds on the first note were tendered on April 15, 1996, and Marullo notified the Massachusetts Attorney General of the loan on April 16, 1996.[3]

By the end of the year, Cannarozzi was back to losing money gambling and borrowed an additional $30,000 from Fiumara in

_____

[2] Cannarozzi was subpoenaed to appear before a federal grand jury and testified in relation to his dealings with Yerardi, but not Fiumara.

[3] The Massachusetts criminal usury statute, Mass. Gen. Laws ch. 271, § 49, discussed at length below, exempts lenders from its penalties for loans exceeding 20% per annum if they "notif[y] the attorney general of his intent to engage in a transaction or transactions which, but for the provisions of this paragraph, would be proscribed . . . providing any such person maintains records of any such transaction."  Mass. Gen. Laws ch. 271, § 49(d).

December 1996.  A December 1, 1996 note recorded this loan; on December 3rd Marullo sent notification to the Attorney General.

In the next two years, Cannarozzi paid Fiumara over $200,000.  Cannarozzi met with Marullo and Fiumara in December 1997 and asserted that his 1996 loans, which totaled $60,000, should have been fully paid by that time.  Cannarozzi was told that his payments had only covered the interest, and Fiumara and Marullo discussed Fiumara's business partner who had been found executed in an automobile trunk with unpaid debts to Whitey Bulger.

In response to Cannarozzi's request, Marullo drafted a note dated December 10, 1997 for $450,000 to pay his outstanding obligations to Fiumara.  Cannarozzi signed this note requiring weekly payments of $1,000, secured by a mortgage on the property of the Sierra's Restaurant ("Sierra's") in Sudbury, Massachusetts, a commercial interest owned by Cannarozzi.  Notice of the loan was delivered to the Attorney General on December 16, 1997.

A new note dated April 24, 1998 for $550,000 extinguished the $450,000 December 1997 note and all prior obligations.  It was a non-interest loan requiring $1,000 weekly payments, also secured by Sierra's.  Marullo sent notice to the Attorney General the same day.

The last promissory note signed by Cannarozzi and Fiumara, also a non-interest loan requiring $1,000 weekly payments,

was dated August 1, 1998 for the amount of $1,000,000 and extinguished the previous note.

Cannarozzi brought suit in January 2000 alleging a number of counts under RICO and Massachusetts state law against Fiumara and several other defendants. The district court dismissed all claims against the other defendants and several claims against Fiumara. Fiumara subsequently filed a motion for summary judgment which the district court granted in full dismissing the remaining RICO and state law claims against Fiumara. Cannarozzi appeals.

## II. Collection of an Unlawful Debt

In Section 1962(b), RICO provides that:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

Id. Cannarozzi's complaint alleges that Fiumara violated RICO by acquiring an interest in Cannarozzi's commercial enterprise, Sierra's, as collateral on debts to Fiumara. To fall within the reach of the statute (and Congress's power to legislate), Sierra's must affect interstate or foreign commerce. 18 U.S.C. § 1962(b); see United States v. López, 514 U.S. 549, 556-59 (1995) (discussing limits of Commerce Clause power). Fiumara has not challenged this characterization. See, e.g., Katzenbach v. McClung, 379 U.S. 294, 300 (1964) ("one can hardly travel without eating"). The statute

takes a flexible stance on how the interest or control is acquired, and Fiumara does not question that his right to Cannarozzi's property as collateral qualifies as "acquir[ing] or maintain[ing], directly or indirectly, any interest in or control of. . . ." 18 U.S.C. § 1962(b).

The Act prohibits appropriation of such property that comes about either "through a pattern of racketeering activity or through collection of an unlawful debt." Id. On appeal, Cannarozzi does not purport to have raised a genuine issue of fact concerning Fiumara's engagement in a pattern of racketeering activity but rather rests the complaint on Fiumara's alleged collection of an unlawful debt.

The three § 1962(b) counts dismissed by the district court correspond to three different loans, each secured by Cannarozzi's interest in Sierra's. In Count 13, Cannarozzi alleges a § 1962(b) violation based on the December 10, 1997 note and mortgage. Count 16 involves the April 24, 1998 note and mortgage, and Count 19 the August 18, 1998 note and mortgage.

Because Cannarozzi relies on the "collection of an unlawful debt" prong of § 1962(b), he must create a genuine issue of fact as to the loan's status as "unlawful." RICO defines "unlawful debt" in § 1961(6) as follows:

> "unlawful debt" means a debt (A) incurred or contracted in gambling activity which was in violation of the law of the United States, a State or political subdivision thereof, or

-6-

which is unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (B) which was incurred in connection with the business of gambling in violation of the law of the United States, a State or political subdivision thereof, or the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate.

18 U.S.C. § 1961(6) (emphasis supplied); see Sundance Land Corp. v. Cmty. First Fed. Sav. & Loan Ass'n., 840 F.2d 653, 665 (9th Cir. 1988) (applying § 1961(6) definition to interpret § 1962(b)); United States v. Salinas, 564 F.2d 688, 689 (5th Cir. 1977)(applying § 1961(6) definition to interpret § 1962(c)). Accordingly, "to prove that what was collected was an unlawful debt within the meaning of RICO, [Cannarozzi] would have to show that [1] the debt was unenforceable in whole or in part because of state or federal laws relating to usury, [2] the debt was incurred in connection with 'the business of lending money . . . at a [usurious] rate,' and [3] the usurious rate was at least twice the enforceable rate." Durante Bros. & Sons, Inc. v. Flushing Nat'l Bank, 755 F.2d 239, 248 (2d Cir. 1985) (quoting 18 U.S.C. § 1961 (6)).

Cannarozzi's claim only survives summary judgment if there is a genuine issue of fact presented by the record as to all three elements. The district court correctly assumed that if the loans in question were enforceable under the Massachusetts criminal

usury statute, Mass. Gen. Laws ch. 271, § 49, then Fiumara deserved

summary judgment.[4]  The Massachusetts criminal usury statute states

in relevant part, in paragraph (a), that,

> Whoever in exchange for either a loan of money
> or other property knowingly contracts for,
> charges, takes or receives, directly or
> indirectly, interest and expenses the
> aggregate of which exceeds an amount greater
> than twenty per centum per annum upon the sum
> loaned or the equivalent rate for a longer or
> shorter period, shall be guilty of criminal
> usury . . . .

Mass. Gen. Laws ch. 271, § 49(a).  In paragraph (d), the statute

provides an important exception to criminal liability:

> The provisions of paragraph (a) . . . shall
> not apply to any person who notifies the
> attorney general of his intent to engage in a
> transaction or transactions which, but for the
> provisions of this paragraph, would be
> proscribed under the provisions of paragraph
> (a) providing any such person maintains
> records of any such transaction.

Mass. Gen. Laws ch. 271, § 49(d) (emphasis supplied).  The Supreme

Judicial Court has explained that "[w]hile parties may contract for

interest in an amount greater than twenty per cent, the Legislature

---

[4]  The district court failed, however, to reference the § 1961(6) definition, with all of its necessary elements.  The district court opinion is incorrect insomuch as it suggests that a debt is "unlawful" for RICO purposes merely by virtue of being "unenforceable under State . . . law in whole or in part as to principal or interest because of the laws relating to usury." 18 U.S.C. § 1961(6).  In addition, "the debt [must have been] incurred in connection with 'the business of lending money . . . at a [usurious] rate,' and  . . . the usurious rate [must have been] at least twice the enforceable rate." Durante Bros. at 248 (quoting 18 U.S.C. § 1961(6)).

-8-

has determined that as a matter of public policy persons who charge more than twenty per cent interest must register with the Attorney General." Begelfer v. Najarian, 409 N.E.2d 167, 172 (Mass. 1980). The legal -- and factual -- inquiry as to Cannarozzi's three RICO counts becomes relatively straightforward: did Fiumara provide the Attorney General adequate notification for the three loans named in the counts?

We review the district court's factual determinations for clear error and its legal conclusions de novo. See Watson v. Deaconess Waltham Hosp., 298 F.3d 102, 108 (1st Cir. 2002). The district court found that "[t]he record is clear and it is undisputed that notifications to the attorney general were sent by Marullo on 4/16/96, 12/3/96, 10/16/97, and 4/24/98." Cannarozzi v. Marullo, Civ. No. 00-10164-REK, at 5 (D. Mass. Feb. 5, 2003). The parties do not dispute this finding, clearly evidenced by the record. The district court recognized that these notification dates did not match each high interest loan disbursed to Cannarozzi and explained that:

> The wording of the [criminal usury] statute plainly states, however, that the notification applies to the "intent to engage in transaction or transactions" and that "notification shall be valid for a two year period." Every loan at issue in this case was made within two years of sending a notification letter to the Attorney General of Massachusetts.

-9-

<u>Id.</u> (emphasis in the original).  That reading, that notification is valid for two years for loan transactions during that period, comports with the language of the statute, and Cannarozzi does not argue to the contrary on appeal.

Nevertheless, Cannarozzi demurs, contending that while Fiumara may have provided adequate notice as to these three loans, that does not make them enforceable by the terms of the usury statute.  Cannarozzi argues on appeal, as he did in opposing summary judgment, as follows:

> Fiumara asserts the mortgages he obtained on Cannarozzi's commercial real estate dated 12/10/97, 4/24/98, and 9/1/98, were security for loans consisting of "roll ups of past debt."  Because the consideration for these mortgages allegedly derived from Fiumara's prior loans to Cannarozzi, plaintiffs argue that if any of said loans were in violation of Mass. Gen. Laws ch. 271, § 49, Fiumara's procurement of the mortgages would also be in violation of 18 U.S.C. § 1962(b).

The argument has some moral and policy appeal: a loanshark should not be able to escape criminal liability -- and recover usurious interest payments -- by the artifice of refinancing with notice to the Attorney General.  Any successful argument, though, must be directed not to the purposes behind RICO, <u>see</u> <u>United States</u> v. <u>Oreto</u>, 37 F.3d 739, 751 (1st Cir. 1994) ("Congress declared in RICO that the statutory purpose was 'to seek the eradication of organized crime in the United States' and Congress listed 'loan sharking' as a means by which 'organized crime derives much of its

-10-

power.'") (quoting Pub. L. 91-452, § 1 (Statement of Findings and Purpose following 18 U.S.C. § 1961)), but rather to Massachusetts law.  See Salinas, 564 F.2d at 691 (dispositive inquiry is "whether the particular State involved prohibits the . . . activity charged") (quoting United States v. Nardello, 303 U.S. 286, 539 (1969)).  Cannarozzi provides no authority for the proposition that Massachusetts courts would refuse to enforce the loans in dispute under the criminal usury statute.[5]

Looking closely at Cannarozzi's argument in the context of the first of these three loans, issued on December 10, 1997, it becomes apparent that the court below did not err in concluding that the loans did not violate the Massachusetts criminal usury statute.[6]  In December 1997, Cannarozzi went to see Fiumara because he could not handle his debt load.  The result was the signing of

---

[5]  Cannarozzi cites one case, Levites v. Chipman, 568 N.E.2d 639, 642 (Mass. App. Ct. 1991), which stands for the proposition that a "loan [is] immune from attack as usurious" if "notice was on file with the Attorney General at the time the loan proceeds were distributed."  This supports the argument that some of the earlier loans -- not at issue in this case -- would not have been enforceable because notice was served late or not at all.  See also Schwartz v. Levensailor, 15 Mass. L. Rep. 177, 2002 Mass. Super. LEXIS 343,at *6 (Mass. Super. Ct. 2002) (loan at usurious rate disbursed without prior notice not enforceable).  Levites, though, does not help Cannarozzi explain why the loans specified in the three counts, secured by his interest in Sierra's, would not be enforced in Massachusetts courts because of the criminal usury statute.

[6]  If Cannarozzi cannot show that the first of these debts was unlawful on a "rolling up" theory, the subsequent debts, properly reported as they were, would also be lawful on that theory.

a new note, one that for the first time was secured by Cannarozzi's commercial property interest in Sierra's. Cannarozzi's argument would require us to accept that a notification defect on part or all of an existing debt cannot be cured by a refinancing with proper notification. We decline to endorse that interpretation of Massachusetts law, principally because Massachusetts courts have applied to the criminal usury statute "the ordinary rule of construction that any criminal statute is construed strictly against the Commonwealth." Hakim Enters., Inc. v. Reinhardt, 566 N.E.2d 115, 116 (Mass. App. Ct. 1991); e.g., Clean Harbors, Inc. v. John Hancock Life Ins. Co., 17 Mass. L. Rep. 468, 2004 Mass. Super. LEXIS 66, at *32 (Mass. Super. Ct. 2004) (declining to invalidate otherwise usurious note despite notification to the Attorney General several hours after loan was disbursed).

On the face of the statute -- and the Supreme Judicial Court's leading case addressing its meaning, see Begelfer, 409 N.E.2d 167 -- notification to the Attorney General is an absolute defense to the enforceability of the note in question. We can glean a rationale for this construction from a related area of Massachusetts law, involving the enforceability of compound interest loans that are refinanced:

> "We think the term 'compound interest', as it is commonly understood, applies to an agreement whereby interest thereafter to accrue automatically bears interest. Such agreements the law has refused to countenance principally for the reason that an improvident

> debtor is not likely to realize the extent to which the interest will accumulate. Though the term 'compound interest' may apply in certain other circumstances, we think it does not apply where interest has already fallen due and has become a debt which, like any other debt, may either be paid in cash or reloaned to the debtor under a new agreement that it shall bear interest. <u>Such an agreement is not a snare which is likely to entrap the unwary, for the borrower cannot fail to realize the exact extent of his obligation.</u>" <u>Household Fin. Corp.</u> v. <u>Goldring</u>, 263 App. Div. 524, 527 (N.Y. 1942). Where a debt includes accrued interest, "if a new note is given for the interest, it is thereby converted into capital, and may rightfully be given with interest." <u>Ferry</u> v. <u>Ferry</u>, 2 Cush. 92, 99 (1848). <u>Wilcox</u> v. <u>Howland</u>, 23 Pick. 167 (1839).

<u>Coupounas</u> v. <u>Madden</u>, 514 N.E.2d 1316, 1321 (Mass. 1987)(emphasis supplied). Similarly, Cannarozzi had the opportunity before signing the new note to realize the magnitude to which his arrearage had escalated. Were his debts then unenforceable under state law, Cannarozzi would have had recourse in state court <u>under the existing note</u>.

Cannarozzi has presented us with no more than a remote possibility, without precedential support, that Massachusetts courts would refuse to enforce a note which refinanced usurious debts. Because "[a]ny reasonable doubt as to the meaning of a criminal statute must be resolved in favor of a defendant," <u>Clean Harbors</u>, 2004 Mass. Super. LEXIS 66 at *32 (interpreting the criminal usury statute), we conclude that Cannarozzi has failed to

establish a genuine issue of fact concerning the existence of an "unlawful debt" to Fiumara as to all three counts.

### III. <u>State Law Claims</u>

Cannarozzi also appeals the dismissal without prejudice of a number of state law claims against Fiumara. According to the supplemental jurisdiction statute, "district courts may decline to exercise supplemental jurisdiction" when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). The district court had dismissed "all claims over which it ha[d] original jurisdiction," and the district court acted within its discretion in declining to exercise jurisdiction over Cannarozzi's state law claims. See <u>Rodríguez</u> v. <u>Doral Mortgage Corp.</u>, 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.").

### IV. <u>Conclusion</u>

For the foregoing reasons, the judgment of the district court is affirmed.

**<u>Affirmed</u>**.