# United States Court of Appeals

## For the First Circuit

No. 05-1733

PABLO ACOSTA,

Plaintiff, Appellant,

v.

UNITED STATES MARSHALS SERVICE, ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. George Z. Singal,* U.S. District Judge]

Before

Boudin, Chief Judge,

Stahl, Senior Circuit Judge,

and Lipez, Circuit Judge.

Alan Joel Finkel for appellant.
T. David Plourde, Assistant United States Attorney, with whom
Thomas P. Colantuono, United States Attorney, was on brief for
appellees.

April 19, 2006

*Of the District of Maine, sitting by designation.

**BOUDIN**, <u>Chief Judge</u>.    On October 19, 1999, Pablo Acosta was arrested on federal drug and firearm charges (he later pled guilty to cocaine distribution) and held without bail.  During his pre-trial detention, the United States Marshals Service lodged him in several county jail facilities with which it contracts; he also spent time in two federal facilities.  Acosta suffered health problems and sued.  This appeal is from the dismissal of that action.

Because the case was dismissed at the pleading stage, we accept as true the facts stated in Acosta's complaint, <u>Mass. Sch. of Law at Andover, Inc.</u> v. <u>Am. Bar Ass'n</u>, 142 F.3d 26, 40 (1st Cir. 1998)--although the grounds for the dismissal were largely procedural.  The sequence of Acosta's alleged medical troubles can be briefly summarized as follows (bearing in mind that the charges of negligence are also only allegations):

- Acosta housed in the Hillsborough County (New Hampshire) Department of Corrections, where a doctor negligently prescribed the medication Elavil for arm pain due to over-tight handcuffs;

- Acosta transferred to the Cumberland County (Maine) Jail, where an unnamed doctor "abruptly terminated" his Elavil prescription;

- Acosta transferred to the Merrimack County (New Hampshire) House of Corrections, where he suffered a seizure allegedly caused by the Elavil treatment and its abrupt termination, causing him to fall from a top bunk and fracture his skull;

- Acosta treated for the skull fracture at the private Dartmouth-Hitchcock Medical Center, where

due to improper treatment he suffered a seizure just prior to being discharged;

- Acosta transferred to a federal facility, FMC Rochester, where under the care of Dr. Thomas Clifford he suffered a fall, broke a finger, and was mistreated;

- Acosta transferred to Strafford County (New Hampshire) House of Corrections, where a new foot injury was initially ignored by the prison staff and then mistreated by a private physician, Dr. Mark Geppert, leading to permanent impairment;

- Acosta transferred to another federal facility, FCI Raybrook, where a staff doctor improperly treated a skin rash.

On February 12, 2002, while still at FCI Raybrook, Acosta filed a standard-form "Claim For Damage, Injury, or Death" with the New Hampshire office of the Marshals Service, seeking $1 million in damages. He listed the accident as having occurred at 11:30 p.m. on February 16, 2000--the date of the skull fracture incident (which occurred in the afternoon)--and identified the Merrimack facility as the situs. He attached several medical records, an excerpt from his pre-sentence report, and a letter to a lawyer. The letter referred to several of the other episodes.

On February 13, 2003, Acosta lodged a complaint in federal district court in New York, later transferred to and filed in the federal district court in New Hampshire and thereafter amended. The amended complaint charged as defendants, among others, the United States, the Marshals Service, the federal Bureau

-3-

of Prisons, county jails in Maine and New Hampshire, Dartmouth-Hitchcock Medical Center, and Drs. Geppert and Clifford.

Acosta alleged claims under 42 U.S.C. § 1983 (2000), under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680 (2000) ("FTCA"), and for negligence under state law based on diversity of citizenship. The episodes set forth above were recounted, together with generalized claims of conspiracy and somewhat more specific claims of negligence. Although Acosta initially proceeded pro se, the amended complaint was co-signed by counsel.

Eventually, after transfer of the case to the federal district court in Maine, motion practice and two recommendations and reports by the magistrate judge,[1] the district court on April 8, 2005, dismissed the complaint. Most of the federal claims were dismissed for failure to exhaust administrative remedies; several others, for failure to state a claim. Finally, the court declined to exercise supplemental jurisdiction over the state-law negligence claims.

Our review, save as to dismissal of the state law claims, is de novo. See Mass. Sch. of Law, 142 F.3d at 40. We begin with

---

[1]One dealt with federal claims against the state entities and employees, Dartmouth-Hitchcock, and a private physician (Dr. Geppert), and also with the state-law negligence claims against them. The other addressed the claims against the federal entities such as the Marshals Service, and the claim against a physician practicing at FMC Rochester (Dr. Clifford).

the civil rights claims under section 1983 against county facilities and personnel, which were dismissed for failure to meet the exhaustion requirement of the Prison Litigation Reform Act of 1995 ("PLRA"). Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended in scattered sections of 18 U.S.C., 28 U.S.C., and 42 U.S.C.). That statute pertinently provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

"Prison conditions" under this provision include individual instances of medical mis- or non-treatment,[2] and Acosta does not claim to have sought any administrative remedy--except for his above described complaint filed with the Marshals Service on February 12, 2002. Because we have treated section 1997e(a) as an affirmative defense, Casanova v. Dubois, 304 F.3d 75, 77-78 (1st Cir. 2002), Acosta might have argued that the burden was upon the defendants to show that there were available (albeit unexhausted) remedies.

---

[2] See Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, . . . whether they allege excessive force or some other wrong."); see also, e.g., Witzke v. Femal, 376 F.3d 744, 751 (7th Cir. 2004).

Instead (perhaps because such remedies usually exist) Acosta has argued that he fulfilled any such exhaustion requirement by sending his claim form to the Marshals Service. This will not wash: the claims as to the counties had to be directed to the county facilities responsible for the supposed wrongdoing. Cf. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir.) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require."), cert. denied, 537 U.S. 949 (2002). Otherwise, the ordinary purposes served by such requirements--to provide timely notice of the claim and an avenue for redress short of litigation, see McCarthy v. Madigan, 503 U.S. 140, 145 (1992); Ezratty v. Puerto Rico, 648 F.2d 770, 774 (1st Cir. 1981)--could not be served. Nothing in Acosta's brief explains how filing a claim with the Marshals Service could constitute adequate notice to a Maine or New Hampshire entity or otherwise encourage administrative resolution of the matter.

The district court also relied upon section 1997e(a) in dismissing the claim against Dr. Clifford, the doctor serving at FMC Rochester. Being at best a federal actor, he was not subject to suit at all under section 1983, see Soldevila v. Sec'y of Agric., 512 F.2d 427, 429 (1st Cir. 1975); but the district court treated the civil rights claim against him as a Bivens action, see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403

U.S. 388 (1971).  The agency responsible for federal prisons is the Bureau of Prisons, not the Marshals Service, and Acosta relies only on the notice he provided to the latter.

The Marshals Service appears to have treated the complaint to it as directed only to the events that occurred while Acosta was housed at the Merrimack County facility; this was certainly the explicit incident referred to in the "basis for claim" and it is far from clear that a package of attachments referring obliquely to other incidents could fairly be treated as stating separate claims as to them.  In any event, no claim was filed with the Bureau of Prisons, so the claim against Dr. Clifford was not exhausted.  See 28 C.F.R. § 542.10-.19 (2005) (regulations governing the Administrative Remedy Program for inmates in facilities operated by the Bureau of Prisons).

One might argue that notice to one federal agency is notice to another, but this would be unrealistic.  The argument might be stronger here because the Bureau and the Marshals Service are both components of the Department of Justice, but both are themselves large organizations.[3]  In all events, to litigate based on whether notice was in fact received, or likely to be received,

---

[3]The federal defendants aver, without contradiction from Acosta, that "[t]he USMS and the BOP are distinct in terms of their bureaucratic organization, personnel, day-to-day operations, oversight, practices, procedures and mission, although their responsibilities may occasionally interact," and cite several portions of the Code of Federal Regulations for support.  See 28 C.F.R. §§ 0.95 et seq.; id. §§ 0.111 et seq.; id. §§ 500 et seq.

by some other agency is a recipe for turning a threshold procedural requirement into a litigation morass of its own.

A second, different set of Acosta's claims was dismissed for failure to exhaust but under a different exhaustion provision. In the second count of his complaint, Acosta alleged claims against the federal government under the Federal Tort Claims Act. A key provision of the FTCA, 28 U.S.C. § 1346(b), allows certain civil actions against the United States based on

> the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

"Employee" includes "officers or employees of any federal agency" and "persons acting on behalf of a federal agency in an official capacity," 28 U.S.C. § 2671, but "federal agency" within the meaning of the statute "does not include any contractor with the United States." Id. The statute also contains an exhaustion requirement,[4] which has been viewed as "a non-waivable jurisdictional requirement" limiting the suit to claims fairly made to the agency. Santiago-Ramirez v. Sec'y of Dep't of Def., 984 F.2d 16, 18, 19-20 (1st Cir. 1993).

_____

[4]"An action shall not be instituted [pursuant to the FTCA] . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a).

Although the complaint's FTCA count was wholly imprecise as to who or what was charged, Acosta says that it should be read as charging the United States with liability for negligent or otherwise wrongful acts of the Marshals Service and the Bureau of Prisons. The district court read the administrative claim made to the Marshals Service as limited to the Merrimack incident and therefore deemed the other FTCA claims barred by failure to exhaust.

In all events, the administrative claim--having been sent to the Marshals Service and not the Bureau of Prisons--excludes the small group of allegations based on treatment within the federal facilities (operated by the Bureau), and we therefore focus upon the claims against the Marshals Service and anyone for whom it might be responsible, namely, the county facilities in which the Marshals Service lodged Acosta. The district court held that claims against the United States based on the conduct of the county facilities were barred by the FTCA's independent contractor exemption, which is quoted above.

This exemption excludes liability where the negligent treatment of a federal prisoner is the fault only of a non-federal facility holding the prisoner under contract with the Marshals Service. Logue v. United States, 412 U.S. 521, 530-32 (1973); see also Larsen v. Empresas El Yunque, Inc., 812 F.2d 14, 14-15 (1st Cir. 1986). Acosta does not dispute this premise; he argues that

pertinent state law could make an entity in the position of the Marshals Service liable for its own decision, if negligent, to entrust someone in its hands to an incompetent independent entity. See Arthur v. Holy Rosary Credit Union, 656 A.2d 830, 834 (N.H. 1995).

Whether such negligent selection of an independent contractor might be actionable under the FTCA is an interesting question but one we need not decide. No such claim is fairly made out by Acosta's administrative filing with the Marshals Service, however many incidents it may be read to embrace. There is nothing whatever in the filing to suggest that the Marshals Service knew, or should have known, that its contract with any particular local facility was peculiarly hazardous to prisoners.

As a fallback argument, Acosta seeks to have the federal action stayed while he makes attempts to satisfy the PLRA and FTCA exhaustion requirements. Medina-Claudio v. Rodríguez-Mateo, 292 F.3d 31, 35-36 (1st Cir. 2002), forecloses this argument as to the PLRA; the FTCA's exhaustion requirement is, as already noted, jurisdictional, Santiago-Ramirez, 984 F.2d at 18. Certainly there is no requirement that the case be stayed rather than dismissed.

The claims against Dartmouth-Hitchcock and Dr. Geppert appear on their face to be claims against private actors and not against federal or state actors subject to civil rights liability under section 1983 or Bivens. Acosta does not persuasively argue

-10-

to the contrary. In any event, we agree with the district court that even if these defendants were official actors, personal liability would exist under federal law only for constitutional violations (e.g., deliberate indifference to serious medical needs), which are not plausibly alleged, and not for mere negligence. See Daniels v. Williams, 474 U.S. 327, 330-33 (1986); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

The only fact Acosta alleged as to Dartmouth-Hitchcock is that someone there overmedicated him with Dilantin; as for Dr. Geppert, the only fact alleged is that he failed to properly diagnose the severity of Acosta's foot injury. We are not required to credit Acosta's bare and conclusory assertion that Dartmouth-Hitchcock and Dr. Geppert were deliberately indifferent to his serious medical needs. See In re Credit Suisse First Boston Corp., 431 F.3d 36, 45 (1st Cir. 2005). Acosta's companion "conspiracy" claims are pure boilerplate, unsupported by any factual allegations.

Of course, negligence claims under state law can be asserted directly against private actors. As to such claims, the district court declined to exercise supplemental jurisdiction and dismissed them without prejudice. (The complaint alleged diversity as an independent basis for such claims, but Acosta has not pursued this alternative basis for his claim.) This is common practice when federal claims fail at the pleading stage, see 28 U.S.C. §

1367(c)(3); <u>Cannarozzi</u> v. <u>Fiumara</u>, 371 F.3d 1, 7 (1st Cir. 2004), and despite Acosta's briefly stated objection on appeal, we see no abuse of discretion.

There is no doubt that the web of exhaustion and related requirements may on occasion frustrate legitimate claims. But these requirements are a response both to legitimate concerns about timely notice to the agency and to past abuses by prisoners (of which the conspiracy claims in this case appear to be a good example). In all events, the exhaustion requirements are legislative and must be respected.

<u>Affirmed</u>.