**Daniel ROSARIO GONZALEZ, Juan Velez. Padilla, Plaintiff(s),**

v.

**UNITED STATES of America, et al., Defendant(s).**

Civil Nos. 09–2200 (DRD), 12–1201, 12–1208.

United States District Court, D. Puerto Rico.

Sept. 30, 2012.

412

Daniel Rosario Gonzalez, Bayamon, PR, pro se.

Juan Velez Padilla, Bayamon, PR, pro se.

Agnes I. Cordero, United States Attorneys Office, Roberto Sueiro–Del–Valle, Roberto Sueiro Del Valle LLM, Leila S. Castro–Moya, Freddie O. Torres–Gomez, San Juan, PR, Mayra Vanessa Estrella Perez–Valdivieso, Rovira–Rodriguez Law Offices, Coto Laurel, PR, for Defendants.

## OMNIBUS OPINION AND ORDER

DANIEL R. DOMÍNGUEZ, District Judge.

Pending before the Court are the following motions: (a) *Motion for Summary Judgment;* the *Statement of Uncontested Material Facts;* and the *Memorandum of Law in Support of Motion for Summary Judgment,* filed by the defendant United States of America (hereinafter the "defendant" or the "Government"), Docket No. 155; (b) *Plaintiffs' Response to United States of America Memorandum in Support of Motion for Summary Judgment,* Docket No. 160; (c) *Plaintiffs' Response to United States' Motion to Dismiss,* Docket No. 161; (d) *Motion to Dismiss* filed by Servicios de Salud en El Hogar y Hospicio San Lucas, Inc., Docket No. 276, and (e) *Response to Defendant Servicios de Salud en El Hogar y Hospicio San Lucas, Inc.,* Docket No. 279 filed by plaintiffs. For the reasons set forth below, the Government's motion for summary judgment is granted.

### Introduction

The instant action stems from several claims filed by plaintiffs Daniel Rosario González and Juan Vélez Padilla, (hereinfter "Plaintiffs" or "Messrs. Rosario and Vélez") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, *et seq.* seeking damages from the United States for the wrongful death of Mr. David Rosario Rosado. Plaintiffs allege that Mr. David Rosario's death was the result of medical malpractice of the professionals in charge of Mr. David Rosario's medical care at the Veterans Administration Caribbean Health Center System in San Juan, Puerto Rico ("VA Hospital"). *See Complaint,* Docket No. 1. Plaintiffs also aver multiple claims for alleged constitutional violations, civil rights violations, loss of benefits and physical injuries.[1]

The record shows that Mr. David Rosario passed away on August 5, 2008. *Id.* and Docket No. 157–8. Thereafter, plaintiffs

---

1. The Court notes that the language used by plaintiffs in their pleadings is offensive, threatening and unwelcome by the Court. Notwithstanding, the Court has overlooked plaintiffs' hostile attitude towards the federal court, and the undersigned when ruling on this matter, as the Court is well aware that plaintiffs are appearing in a *pro se* fashion, and the emotionally justified condition involved after the passing of a parent. However, plaintiffs' litigation conduct remain undesirable and completely unjustifiable.

filed on or about thirty-seven additional FTCA claims between November 14, 2008 through October 26, 2009. *See* Docket No. 157–4.

On November 25, 2009, plaintiffs filed the instant action *pro se.* The record further shows that Mr. Daniel Rosario is the son of the deceased Mr. David Rosario. Mr. Vélez, however, has no blood kinship with the deceased Mr. David Rosario, or at least there is no evidence in the record to support said finding. As of this date, plaintiffs continue to appear *pro se,* notwithstanding that the Court has encouraged them to undertake legal representation due to the potential/complex issues involved in the case at bar, which can be seemed quite challenging to the Court to be handled by the *pro se* plaintiffs. After the filing of the instant action, plaintiffs filed seventy-three additional administrative claims under the FTCA from December 18, 2009 through March 22, 2011. *See* Docket No. 157–11.

### Factual and Procedural Background

As stated above, the instant action was filed on November 25, 2009.[2] The Court finds that the following material facts are uncontested, and are set forth below for easy reference:

1. Mr. David Rosario Rosado was an 81 year old veteran who passed away on August 8, 2005 at the VA Hospital. *See* Docket No. 157–8, Ms. Ana M. Margarida Juliá's Unsworn Declaration under Penalty of Perjury, given on August 25, 2011.

2. Veteran David Rosario had been admitted at the VA Hospital on or about four times, to wit:

a. November 13, 2007 to February 8, 2008

b. February 12, 2008 to February 20, 2008

c. March 16, 2008 to April 11, 2008

d. April 29, 2008 to August 5, 2008. *See* Docket entries No. 157–8 and 160.

3. Veteran David Rosario suffered from diabetes, and from other chronic ailments. *See* Docket No. 158–1 and 158–4 (the Autopsy Report, which was performed on August 6, 2008).

4. On August 4, 2008, plaintiff Daniel Rosario–González filed four *pro se* cases:[3]

a. *Daniel Rosario–González v. United States,* Civil No. 08–1836(RLA) was a medical malpractice action filed against the United States (VAMC) claiming $66,600,000.00 in damages (Docket No. 1). On October 17, 2008, the Court granted the United States Motion to Dismiss for failure to exhaust administrative remedies, and thus depriving the court of subject matter jurisdiction. (Docket No. 6).

b. *Daniel Rosario–González v. Wilfredo Rosario–González, Gustavo Reyes, Iván Rosario–González,* Zenaida Pulido and Edwin Rosario–González, Civil No. 08–1837(CCC) was mainly an action against plaintiff's brothers (Wilfredo,

---

**2.** On July 12, 2012, the instant case was consolidated with the following cases, *Daniel Rosario González v. Department of Veterans Affairs,* Civil No. 12–1201, and *Daniel Rosario González v. Department of Veterans Affairs,* Civil No. 12–1208. See Order of July 12, 2012, Docket No. 404. All the consolidated cases stem from the same set of facts, that is, the passing of veteran David Rosario Rosado, and the alleged medical malpractice and neg-

ligence claimed by his son Daniel Rosario González in support of his damages' request.

**3.** The first *pro se* case filed by plaintiff Daniel Rosario–González, unrelated to his father, was a petition for writ of *habeas corpus* filed on May 17, 1993. *See Daniel Rosario–Gonzalez v. Superintendent Ramon Avila–Rodriguez and Puerto Rico Department of Justice,* Civil No. 93–1724(JAF).

Iván and Edwin[4]) for fraudulent transfer of monies in the amount of $166,087.00 deposited in bank accounts belonging to his father, David Rosario-Rosado, from June to July 2006; actions made under duress (Docket No. 1). The First Complaint as well as the Amended Complaint filed on February 24, 2009, claimed $66,600,000.00 in damages (Docket No. 25). On May 29, 2009, the Court dismissed the case without prejudice for lack of diversity jurisdiction under 28 U.S.C. § 1332 to be filed in the appropriate court of the Commonwealth of Puerto Rico. (Docket No. 54).

c. *Daniel Rosario–González v. Servicios de Salud en el Hogar y Hospicio San Lucas,* Civil No. 08–1838(RLA) was a medical malpractice action against the defendant claiming $66,600,000.00 in damages. On October 17, 2008, the court dismissed the case for lack of federal subject matter jurisdiction, and lacking diversity jurisdiction under 28 U.S.C. § 1332.

d. On October 23, 2008 Daniel Rosario–González, *pro se,* filed Civil No. 08–2213 (GAG/CVR) against Servicios de Salud en el Hogar y Hospicio San Lucas, Inc. claiming $66,600,000.00 in damages. On April 28, 2009 the case was dismissed for lack of subject matter jurisdiction. *See Order* entered on April 22, 2009, by the Hon. Gustavo A. Gelpí (Docket No. 109). However, on April 20, 2012, plaintiff acknowledged in his opposition to the United States Magistrate's Report and Recommendation that he was not bringing any claims against the Veterans Administration.

5. As stated above, plaintiff Daniel Rosario has filed thirty-seven administrative claims prior to the filing of the instant case, however, only one claim has been filed by plaintiff Vélez, that is, Claim No. 6. *See* Docket No. 157–4.

6. The record further shows that when plaintiffs filed the instant action, the Veterans Administration ("VA") had not taken any action on the pending administrative claims presented by plaintiffs. According to the FTCA, a federal agency has six months to decide the administrative claim. When the federal agency does not issue a decision within the six month period, then the administrative claims are deemed denied. In the instant case, the VA denied the first thirty-two administrative claims, that is, from November 2008 to October 26, 2009, based on the fact of plaintiffs' legal action filed on November 25, 2009. *See* Docket No. 157–6, Declaration of Regional Counsel [of the Department of Veterans Affairs] Gary Slemmens, given on August 25, 2011. "Since the Plaintiff Daniel Rosario–González elected to file suit before the Federal District Court on November 25, 2009, by operation of law he deprived the Department of Veterans Affairs of authority to act on his administrative claims." *Id.*

7. As to the claims filed on October 26, 2009, Claims No. 33–35, the same were not analyzed by the agency, as they were barred by the filing of the instant action on November 25, 2009. *See* Docket No. 157–12.

8. As to the claims filed after November 25, 2009, Claims No. 36–37, the same were not considered by the agency, as the filing of the action in the district court deprives the agency of administrative jurisdiction. "Once the claimant opts to file

---

**4.** Gustavo Reyes is allegedly the consensual partner of Wilfredo Rosario–González and both work for an airline in the United States. *See* Appendix 1 to the *Complaint* (Docket No.

1). Zenaida Pulido lives in the same household as Iván Rosario–González. *See Complaint,* pages 1–2.

suit, the agency is divested of authority to consider a claim." *See* Docket No. 157–12.

9. On February 10, 2012, Mr. Gary Slemmens, Regional Counsel of the Department of Veterans Affairs, sent a letter to plaintiff Daniel Rosario González, informing plaintiff that the claims filed on November 18, 2008 through October 26, 2009 were "denied as you have elected to pursue your litigative remedy." *See* Docket No. 157–1. "Additionally, no reference is here made to administrative appeal process as that has been mooted by the litigation election." *Id.* As to the advance payments requested by plaintiff Daniel Rosario, the agency denied them. "Your claims also request advance payment of $100,000.00 for each one of the claims received. Please be advised that the Office of Regional Counsel has no authority to provide an advance payment prior to complete investigation and administrative or litigative disposition of a claim." *Id.*

10. The Court notes that plaintiffs are requesting the entry of a declaratory judgment and a damages award in excess of $4,000,000,000,000.00 plus costs and interest, and the reasonable amount of not less than $4,000,000,000,000.00 for compensatory damages. *See Complaint,* Docket No. 1, page 18.

### Applicable Law and Discussion

#### A. *The Motion to Dismiss Standard.*

Rule 12(b) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") provides the grounds for dismissal of an action. Fed. R.Civ.P. 12(b)(1) provides that an action may be dismissed for lack of subject matter jurisdiction, and Rule 12(b)(6) provides that dismissal is warranted if the complaint fails to state a claim upon which relief can be granted. "Although co-defendants' motion to dismiss is filed under both Rule 12(b)(1) and 12(b)(6) the matter is distinctive since both motions are subject to similar threshold standards. *See Murphy v. United States,* 45 F.3d 520, 522 (1st Cir.1995); *Negrón–Gaztambide v. Hernández–Torres,* 35 F.3d 25, 27 (1st Cir. 1994); *Torres Maysonet v. Drillex, S.E.,* 229 F.Supp.2d 105, 107 (D.P.R.2002).

"When a court is confronted with motions to dismiss under both Rules 12(b)(1) and 12(b)(6), it ordinarily ought to decide the former before broaching the latter," (citations omitted), *Deniz v. Municipality of Guaynabo,* 285 F.3d 142, 149 (1st Cir. 2002). "After all, if the court lacks subject matter jurisdiction, assessment of the merits becomes a matter of purely academic interest." 285 F.3d at 150.

Rule 12(b)(1) provides that a complaint will be dismissed if the court lacks subject matter jurisdiction. It is settled that the standard followed by the court when considering a dismissal request under Rule 12(b)(1), is that the court "must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor." *Viqueira v. First Bank,* 140 F.3d 12, 16 (1st Cir.1998). To determine jurisdiction under Rule 12(b)(1), the court may also review the evidence on record, including affidavits and depositions, as opposed to a dismissal request under any other subsection of Rule 12(b). Once the jurisdiction of the court is challenged by the defendant through a motion to dismiss, "it is plaintiff's burden to establish that the court has jurisdiction." *Rolón v. Rafael Rosario & Associates, Inc., et al.,* 450 F.Supp.2d 153, 156 (D.P.R.2006).

In the instant case, the defendant Servicios de Salud en el Hogar y Hospicio San Lucas moved for dismissal of the instant action on grounds of *res judicata,* and in support of the Government's motion for summary judgment, which the Court interprets, as a joinder to the Government's motion. *See* Docket No. 276. *See also*

*Motion for Joinder and Adoption of Clinical Medical Services for VA Motion for Summary Judgment* filed by defendant Servicios de Salud en el Hogar y Hospicio San Lucas, Docket No. 275.

After a careful review of defendant Servicios de Salud en el Hogar y Hospicio San Lucas' motion to dismiss, the Court finds that the dismissal request is warranted on two grounds: (a) the Court does not have jurisdiction over Servicios de Salud en el Hogar y Hospicio San Lucas, as it is not a federal entity, hence, the plaintiffs have no actionable cause of action under the FTCA; (b) the plaintiffs' tort action against the defendant Servicios de Salud en el Hogar y Hospicio San Lucas is time-barred, as veteran David Rosario Rosado passed away on August 5, 2008 and the instant action was filed on November 25, 2009. In addition, the record shows that this is the third time that plaintiff Daniel Rosario has filed an action against Servicios de Salud en el Hogar y Hospicio San Lucas on the same grounds. *See Daniel Rosario–González v. Servicios de Salud en el Hogar y Hospicio San Lucas,* Civil No. 08–1838(RLA), and *Daniel Rosario–González v. Servicios de Salud en el Hogar y Hospicio San Lucas,* Civil No. 08–2213(GAG). Both cases were dismissed. *See supra* pages 414–15.

#### B. *The Summary Judgment Standard.*

Generally, "[s]ummary judgment is proper where 'the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law.' Fed.R.Civ.P. 56(c)." *Richardson v. Friendly Ice Cream Corporation,* 594 F.3d 69, 74 (1st Cir.2010). See also *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Coca–Cola, Co.,* 522

F.3d 168, 175 (1st Cir.2008). "The object of summary judgment is 'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required'." *Dávila v. Corporación de Puerto Rico Para La Difusión Pública,* 498 F.3d 9, 12 (1st Cir. 2007), citing from *Acosta v. Ames Dep't Stores, Inc.,* 386 F.3d 5, 7 (1st Cir.2004),(quoting *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir. 1992)). In *Dávila,* the Court held:

> For this purpose, an issue is genuine if a reasonable jury could resolve the point in favor of the nonmoving party. *Suárez v. Pueblo Int'l, Inc.,* 229 F.3d 49, 53 (1st Cir.2000). By like token, a fact is material if it has the potential to determine the outcome of the litigation. *See Calvi v. Knox County,* 470 F.3d 422, 426 (1st Cir.2006). Where, as here, the non-movant has the burden of proof and the evidence on one or more of the critical issues in the case "is … not significantly probative, summary judgment may be granted." *Acosta,* 386 F.3d at 8 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

At the summary judgment stage, the Court "must scrutinize the evidence in the light most agreeable to the nonmoving party, giving that party the benefit of any and all reasonable inferences". *Noviello v. City of Boston,* 398 F.3d 76, 84 (1st Cir. 2005), citing *Cox v. Hainey,* 391 F.3d 25, 27 (1st Cir.2004). See also *Richardson v. Friendly Ice Cream Corporation,* 594 F.3d at 74. "[T]he nonmovant bears 'the burden of producing specific facts sufficient to defect the swing of the summary judgment scythe.' " *Noviello,* 398 F.3d at 84. "Those facts, typically set forth in affidavits, depositions, and the like, must have evidentiary value; as a rule, '[e]vidence that is inadmissible at trial, such as, inadmissible hearsay, may not be considered on sum-

mary judgment.'" *Id.* at 84, citing *Vázquez v. López–Rosario,* 134 F.3d 28, 33 (1st Cir.1998); accord *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990). "The evidence presented by the non-moving party may not be 'conclusory allegations, improbable inferences, [or] unsupported speculation.'" *Torres–Negrón v. Merck & Company, Inc.,* 488 F.3d 34, 39 (1st Cir.2007), citing *Medina–Muñoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

Moreover, "[a] fact is material if it might 'affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Disputes over facts that are not outcome determinative will not preclude the entry of summary judgment." *Id. See Emiabata d/b/a Nova Express v. The United States,* 90 Fed.Cl. 22, 27 (2009).

In *Sánchez v. United States,* 671 F.3d 86, 97 (1st Cir.2012), the Court held:

The plaintiffs argue that their allegations are sufficient to raise disputed facts derived from pleadings, depositions, answers to interrogatories, admissions and affidavits. " *Magee v. United States,* 121 F.3d 1, 2 (1st Cir.1997)." "As we have held," [i]t is a long standing principle of this Circuit that bald assertions and unsupportable conclusions are not enough to create a genuine issue of material fact. *Rojas–Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de P.R.,* 394 F.3d 40, 44 (1st Cir.2005).

Plaintiffs' "bald assertions and unsupportable conclusions are not enough to create a genuine issue of material fact" that may warrant a bench trial. *See Sánchez v. United States, supra.* "Disputes over facts that are not outcome determinative will not preclude the entry of summary judgment." *Id. See also Emiabata d/b/a*

*Nova Express v. The United States,* 90 Fed.Cl. 22, 27 (2009). *See also Colburn v. Parker Hannifin/Nichols Portland Div.,* 429 F.3d 325, 332 (1st Cir.2005). In *Colburn, supra,* the Court held:

Colburn argues that the affidavit should not have been stricken because it was not creating a "sham fact issue." *Franks v. Nimmo,* 796 F.2d 1230, 1237 (10th Cir.1986). But the applicable standard in this circuit is not whether a sham issue of fact has been created. Our law is clear that "[w]hen an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory" without providing "a satisfactory explanation of why the testimony is changed." *Colantuoni v. Alfred Calcagni & Sons, Inc.,* 44 F.3d 1, 4–5 (1st Cir.1994) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2726, at 30–31 (2d ed. Supp.1994)).

*See also Morales v. A.C. Orssleff's EFTF,* 246 F.3d 32, 35 (1st Cir.2001) ("We have refused to allow issues of fact to be created simply by submitting a subsequent contradictory affidavit"); *Abreu–Guzmán, et al. v. Ford, et al.,* 241 F.3d 69, 74 (1st Cir. 2001) ("We have repeatedly held that a party opposing summary judgment may not manufacture a dispute of fact by contradicting his earlier sworn testimony without a satisfactory explanation of why the testimony was changed").

In *González v. United States,* 284 F.3d 281, 287–288 (1st Cir.2002), the Court held:

A Rule 12(b)(1) motion is sometimes transformed into a Rule 56 motion where jurisdictional issues cannot be separated from the merits of the case. *See Valentín v. Hosp. Bella Vista,* 254 F.3d 358, 363, n. 3 (1st Cir.2001). A jurisdictional issue is intertwined with

the merits where the court's subject matter jurisdiction depends upon the statute that governs the substantive claims in the case. *McLellan Highway Corp. v. United States,* 95 F.Supp.2d 1, 5–6 (D.Mass.2000).

The jurisdictional issue in this case is a statute of limitations question-whether the plaintiff timely filed her claim under the FTCA. While the FTCA also provides the basis for the cause of action here, it is clear that the facts relevant to the determination of subject matter jurisdiction do not go directly to the merits of the plaintiff's claim. That is, the determination of whether the claim is time-barred bears no relationship to whether the plaintiff can make out a showing of negligence on the merits of the case. *See generally, Trentacosta v. Frontier Pac. Aircraft Indus., Inc.,* 813 F.2d 1553, 1558 (9th Cir.1987). Accordingly, the 12(b)(1) motion should not be characterized as a motion for summary judgment on this ground.

As stated above, the Court has decided to convert the defendant Servicios de Salud en el Hogar y Hospicio San Lucas' motion to dismiss to a motion for summary judgment, as Servicios de Salud en el Hogar y Hospicio San Lucas has formally joined the motion for summary judgment filed by Clinical Medical Services for VA, Docket No. 139, and has stated its support for the Government's motion for summary judgment, Docket No. 155.

In the instant case, the Department of Veterans Affairs denied plaintiffs' administrative claims filed from November 2008 until October 26, 2009. *See* Docket No. 157–6. "Since Plaintiff Daniel Rosario–González elected to file suit before the Federal District Court on November 25, 2009, by operation of law he deprived the Department of Veterans Affairs of authority to act on his administrative claims." *Id.*

Moreover, pursuant to 28 U.S.C. § 2675(a), the agency has six months to make an administrative determination of the claim. "Before the expiration of that term, the 'DVA' on May 13, 2009, requested from 'Daniel' a four-month extension to make the final determination." *See* Docket No. 157–8, and the letters dated on May 13, 2009, Docket No. 157–2. The record shows that on February 1, 2010, the agency denied thirty-two administrative claims, *see* Docket No. 157–1, as plaintiffs had already filed the instant action on November 25, 2009. "After the filing of this case on November 25, 2009, plaintiff 'Daniel' submitted additional administrative claims, in excess of fifty (50), to the 'DVA.'" *See* Docket No. 157–8.

On August 17, 2010, plaintiffs filed an Interlocutory Appeal with the United States Court of Appeals for the First Circuit (hereinafter the "First Circuit"), No. 10–2062. On October 28, 2010, the First Circuit entered judgment dismissing the case, "[a]s Appellants must wait until their entire action is adjudicated before obtaining appellate review of the orders denying default." *See* Docket entries No. 102 and 103.

Hence, the Court must now addressed the allegations made in the *Complaint,* as well as the Government's *Motion for Summary Judgment,* Docket No. 155. In order to properly address plaintiffs' claims, the Court will review whether indeed the plaintiffs exhausted the applicable administrative remedies prior to the filing of the instant action, and whether the administrative claims, if any, survived the administrative proceedings.

C. *The FTCA Statutory Scheme.*

28 U.S.C. §§ 2671, *et seq.,* govern the Federal Tort Claims Procedure, the administrative procedure that shall be followed by any individual that has a claim

against the United States with the limitations provided by the statute. It is particularly relevant the provisions regarding the administrative procedure to be followed, as they are jurisdictional in nature.

Section 2675 provides in its relevant part:

> (a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. **The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.** The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.
>
> (b) Action under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim. (Emphasis ours).

In *Román–Cancel v. United States*, 613 F.3d 37, 41–44 (1st Cir.2010), the Court held:

The time limits for FTCA actions have more than one dimension. A tort claim against the United States "shall be forever barred unless it is presented in writing to the appropriate federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing ... of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). These temporal parameters are strictly construed in favor of the sovereign. *Patterson v. United States*, 451 F.3d 268, 270 (1st Cir. 2006).

. . .

Compliance with the FTCA's temporal deadlines is both mandatory and jurisdictional. *González v. United States*, 284 F.3d 281, 288 (1st Cir.2002); *González–Bernal v. United States*, 907 F.2d 246, 248 (1st Cir.1990). It is a familiar rule that challenges to a federal court's subject matter jurisdiction can be raised at any stage of the litigation. *See, e.g., Connectu LLC v. Zuckerberg*, 522 F.3d 82, 86 n. 2 (1st Cir.2008); *Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP*, 362 F.3d 136, 138–39 (1st Cir.2004). That rule controls here: this particular jurisdictional question, although raised by the government for the first time on appeal, is properly before us.

The dilemma created by the duplicative administrative claims is more apparent than real. The papers in the case describe only a single injury: the (allegedly negligent) reduction of the plaintiff's disability benefits. Even without the claim forms (which are not part of the record on appeal), the only inference that can be drawn is that both claims relate to that injury. *See* 32 C.F.R. § 750.26(c) ("A claim is a notice ... of an incident giving rise to Government liability...."). From a legal standpoint,

then, the second claim is the functional equivalent of the first.

. . .

The FTCA sets out a six-month period following the denial of an administrative claim in which an FTCA action premised on that claim may be brought. 28 U.S.C. § 2401(b). Prior to the expiration of that period, a claimant, as an alternative, also has six months to file a request with the agency for reconsideration of the previously denied claim. 28 C.F.R. § 14.9(b). A timely request for reconsideration will toll the six-month period for filing suit for an additional six months (or such shorter period in which the agency actually responds to the request). *See Berti v. VA Hosp.*, 860 F.2d 338, 340 (9th Cir.1988). The time parameters for such requests for reconsideration are strictly enforced. *See id.* This means that an untimely request does not reopen an expired six-month window for the filing of suit. *Id.*

. . .

For FTCA purposes, a claim accrues upon the occurrence of the underlying injury. *Callahan v. United States*, 426 F.3d 444, 450–51 (1st Cir.2005). This moment is pinpointed at the time the injured party knows of the existence and the cause of his injury. *Id.* at 451. Something less than full knowledge suffices to start the running of the FTCA limitations period. *Skwira v. United States*, 344 F.3d 64, 78 (1st Cir.2003). Accrual is triggered by the discovery of sufficient facts about the injury and its cause to prompt a reasonable person to seek advice to decide if there is a basis for filing a claim. *Callahan*, 426 F.3d at 451; *Skwira*, 344 F.3d at 78.

The United States' motion for summary judgment thoroughly analyzed the FTCA scheme which starts with the filing of an administrative claim, a formal denial, or a deemed denial, followed by the filing of the lawsuit. The United States made reference to the law review article of Ugo Colello,[5] providing an exhaustive analysis of the statutory time limits provided by the FTCA, which are jurisdictional in nature:

> The FTCA represents a limited waiver of the United States' sovereign immunity that must be strictly construed, and the statute of limitations applicable to FTCA actions is intimately tied to that waiver. Could it be that Congress waived the United States' sovereign immunity to the extent that no limitations period applies to deemed denials? Did Congress intend to provide "deemed deniers" a right against the United States enforceable in perpetuity?" Ugo Colello, *Op. Cit*, page 395.

The core of the article, in Colello's own words is:

> In this Article, I suggest that, contrary to the conclusion reached by some courts, **Congress did not waive the United States' sovereign immunity to the extent that no limitations period applies to deemed denials.** The central thrust of court decisions to the contrary is that the FTCA's statute of limitations is silent with respect to deemed denials, and that Congress's silence therefore evinces an intent not to impose a limitations period on deemed denials. I argue that **this analysis of congressional silence is fundamentally mistaken, for it ignores the well established practice of borrowing a state or federal limitations period when Congress is silent on the limitations question. I show**

**5.** *See* Ugo Colello, *The Case for Borrowing a Limitations Period for Deemed–Denial Suits Brought Pursuant to the Federal Tort Claims Act*, 35 San Diego Law Review 391 (Spring 1998).

that although the borrowing principle has not been imported into the FTCA context, the deemed-denial problem is a perfect candidate for application of that principle, that a federal (not state) statute of limitations should be borrowed, and that the six-month period prescribed in § 2401(b) should apply to deemed denials." *Id.* page 395. (Emphasis added).

In *Taumby v. United States*, 902 F.2d 1362, 1366 (8th Cir.1990), the Eighth Circuit Court had decided that according to the legislative history of 28 U.S.C. § 2675(a) it could not be interpreted that the statute would allow claimants an indefinite time to file suit after the deemed denial period had elapsed. "We are concerned that adopting *Taumby's* contrary reading of section 2675(a) would fly in the face of the FTCA, its statute of limitations, and the legislative history of the section, because, it would, in essence, reward claimants for doing nothing." (Emphasis added). On rehearing, the Eighth Circuit reversed itself on the limitations issue, *Taumby v. United States*, 919 F.2d 69, 70, 72 (8th Cir.1990), and held that "**no limitations period was triggered at the conclusion of the six-month settlement period.**" (Emphasis added).

The Justice Department argued on rehearing that the *Taumby I* panel incorrectly interpreted § 2675(a). The Department's brief on rehearing stated that:

> It is defendant's position that—as the [ ] dissent in the case at bar argues, and as the court in *Conn v. United States* held—there is no time limit for the filing of an FTCA action when an administrative claim is deemed to be denied under 28 U.S.C. 2675(a) by virtue of an agency's failure to finally dispose of the claim within six months. We concur in the view that the statutory language—which states in pertinent part that "[t]he fail-

ure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section"—is plain and unambiguous, and mandates the conclusion that a claimant is free to bring suit at any time after the expiration of the six-month period prescribed in section 2675(a).

. . . .

> In the event that the "open-ended" character of 28 U.S.C. § 2675(a) poses a serious problem, defendant will seek an appropriate legislative solution. After stating that the plain language of the statute controlled and that the legislative history accompanying § 2675(a) was irrelevant, the Justice Department nonetheless noted that the legislative history comported with the plain language of the statute, such that no limitations period begins to run at the expiration of the six-month settlement period.

Given the Department's reversal on rehearing, it is important to know exactly what the Department conceded. Plainly, the Justice Department did not concede that after an FTCA claimant deems a claim denied, no statute of limitations is triggered. Rather, consistent with the facts of *Taumby's* suit and the cases, the Department argued that (1) the mere expiration of the six-month settlement period, without any action taken by the claimant or the agency, does not automatically deem a claim denied; and (2) no limitations period is triggered at the conclusion of the six-month settlement period if the agency does not formally deny the claim or the claimant does not take action to deem the claim denied.

Unfortunately, the Justice Department's concession can be construed as somewhat ambiguous because the first sentence in the quoted portion of the United States'

brief is much broader than the second sentence. The first sentence seems to state the sweeping proposition that no limitations period applies to all deemed denials—in other words, that § 2675(a) somehow solves the written-notice and second-suit problems. But *Taumby I* did not address either of these problems. *Taumby* never received a formal denial from the agency, never took any action (before filing suit) indicating that he deemed his administrative claim denied, and never filed a second suit." *Id.* pages 409–411.

■■■ Despite *Taumby II*, the Justice Department can still argue that under the borrowing principle "deemed deniers"[6] have only six-months to file suit after the agency's six-month period to consider the claims expires. The borrowing principle arises from the same FTCA statute and it is justified by the Congressional Record.[7]

6. "... not imposing a limitations period on deemed deniers severely prejudices the United States because suits can be repeatedly filed over an indefinite period of time. This puts the Justice Department in the untenable position of having to defend stale claims. Prior to 1966, this would have never happened because all FTCA claimants who filed suit were subjected to a limitations period. It is therefore wrong to suggest (since nothing in the legislative history supports such a conclusion) that despite Congress's intent in 1966 to create a new and improved dispute-resolution system beneficial to FTCA claimants and the United States, Congress nonetheless intended to make the United States worse off than it was prior to 1966. Ugo Colello, *Op. Cit.*, page 443.

In short, it is plain that a no-limitations rule for deemed denials harms all four groups Congress intended to benefit: courts will have to deal with repetitive filings over an indefinite period of time; FTCA claimants who receive formal denials are subjected to a more narrow window within which to file suit than deemed deniers; the Justice Department, perhaps years later, will have to relitigate suits that have been litigated and dismissed; and agencies will have to locate witnesses whose memories will surely have faded and documents that may have been destroyed. It would be wrong, therefore, to suggest that the borrowing principle should not be applied to the deemed-denial problem because Congress's silence somehow promotes a legislative policy objective. *Id.* at page 444.

7. "The only statement in the legislative history that may support a finding that no statute of limitations applies to deemed denials is found in the section-by-section analysis of the 1966 amendments. Both the House and Senate Reports state the following:

This section amends the provisions of section 2401, the limitations section, to conform the section to the amendments added by the bill. The amendments have the effect of simplifying the language of section 2401 to require that a claimant must file a claim in writing to the appropriate Federal agency within 2 years after the claim accrues, and to further require the filing of a court action within 6 months of notice by certified or registered mail of a final decision of the claim by the agency to which it was presented. There is no reason to think, however, that this wooden statement represents an explicit directive from Congress that no limitations period should apply to deemed denials. First, the operative language in the House and Senate Reports merely restates the text of § 2401(b)—nothing more, nothing less. Second, the language shows that in "conform[ing § 2401(b)] to the amendments added by the bill," Congress envisioned FTCA claimants deeming their claims denied by filing suit sometime after the six-month settlement period expired. As such, the statute of limitations issue becomes moot, and § 2401(b) was "simplified" to reflect this fact. In other words, there would have been no need to include in § 2401(b) a limitations period for deemed denials because the act of deeming a claim denied in most cases consists of filing suit.

But it is quite a different matter to conclude from the statement in the section-by-section analysis of *§ 2401(b)* that Congress did not intend to impose a limitations period when an FTCA claimant deems her claim denied by providing an agency written notice of the deemed-denial decision or when a second suit is filed after a claim is deemed denied by filing suit. When Congress amended the FTCA in 1966, it was not acting in a vacuum. Rather, as courts have recognized, the Con-

To conclude the opposite it would mean to bless and benefit claimants by their inaction with an indefinite period in which to sue the United States.

[W]hen Congress waives the United States' immunity from suit, congressionally prescribed statutes of limitations place bounds upon the waiver by contracting the jurisdiction of federal courts. The FTCA is a good example. Because compliance with § 2401(b) is jurisdictional, **it operates as a jurisdiction-limiting statute as well as a statute that vindicates the value of repose.** By circumscribing an Article III court's power of judicial review, **Congress protects the public fisc by cutting off persons' right to sue the United States,** thereby **freeing up government resources** for more immediately relevant matters. Accordingly, unless Congress clearly indicates otherwise, applying the limitations period in § 2401(b) to FTCA **suits protects the United States from having to dip into the public fisc to compensate individuals whose tort claims, because of the passage of time, may not rest on an accurate factual foundation.** *Id.,* Ugo Colello, *Op. Cit.,* page 415.

■ Examining the United States' *Summary of Claims,* Docket No. 157–4, and the last column which establishes the deemed denial date of the administrative claim filed, from this date we add six more months and we obtain the bar date for filing the lawsuit. Therefore, Claims 1–6 are time-barred (deemed denial dates running from May 14, 2009 up to May 18, 2009, and all refer to the period of time from November 13, 2007 until August 5, 2008 [the four hospitalizations], which includes the alleged wrongful death claims). Claims 7–10 which were filed on November 25, 2008, were deemed denied as the six month period expired on May 25, 2009. The record is silent as to whether plaintiffs completed the administrative appeals procedure. The Court notes that the instant action was filed on November 25, 2009. Hence, Claims 7–10 are also time-barred for failure to exhaust the administrative procedure.

■ However, the subsequent Claims 11–37, filed between June 1, 2009 and October 9, 2010, are also barred for filing because the claimants opted to file the instant lawsuit on November 25, 2009. **When an FTCA claimant deems a claim denied by filing suit,** well accepted doctrines of administrative exhaustion in general and the administrative-exhaustion scheme of the FTCA in particular compel the conclusion that an agency is then powerless to issue a legally effective formal denial. **The doctrine of administrative exhaustion holds that a plaintiff has gone through a legislatively-prescribed administrative process and been unsuccessful in obtaining relief via that process. Exhaustion, then, means that an FTCA claimant was unable to**

gress legislates against a background of well settled common-law principles, one of which is the principle of repose, which drives the practice of borrowing statutes of limitations and which must be incorporated into the FTCA unless Congress instructs otherwise. Thus, it would be extraordinary indeed to conclude that the 1966 Congress intended not to impose a limitations period on deemed denials, yet failed to utter a single word in support of that conclusion. That Congress could not have intended a no-limitations rule for deemed deniers is reinforced further still because, in addition to the legislative history suggesting a six-month limitations period applies to deemed denials, other clearly expressed policies underlying the 1966 amendments to the FTCA suggest that Congress must have intended the six-month limitations period in § 2401(b) to apply once an FTCA claimant takes action to deem her claim denied." Ugo Colello, *Op. Cit.* pages 438–441.

settle her claim in the agency and therefore can obtain relief only (if at all) in an Article III court.** Because formal denials and deemed denials present two equally valid ways to exhaust FTCA administrative remedies, it must follow that when an FTCA claimant deems her claim denied, she is saying that her case cannot be settled within the administrative agency. **Once an FTCA claimant exhausts her administrative remedies and files suit, § 1346(b)(1) invests Article III courts with exclusive jurisdiction over the claim. Thus, when an FTCA claimant deems her claim denied by filing suit, agency issuance of a formal written denial has no legal effect** because the agency itself no longer has jurisdiction over the claim. *Id.,* page 445.

[T]he contention that an administrative agency has the power to issue a formal denial after an FTCA claimant has deemed her claim denied by filing suit is flatly inconsistent with the doctrine of administrative exhaustion and the plain language of § 1346(b)(1). Plainly, **an FTCA claimant cannot exhaust her administrative remedies twice; exhaustion means exhaustion, not quasi-exhaustion. Likewise, once an FTCA administrative claim has been finally denied through the filing of a lawsuit, § 1346 jurisdiction is triggered, and that jurisdiction is exclusive of any other adjudicative body.** An Article III court cannot logically have exclusive jurisdiction over a deemed-denial lawsuit if an administrative agency retains the authority to adjudicate and deny the claim. Jurisdiction means jurisdiction, not some curious notion that an FTCA claimant straddles a jurisdictional fence when she deems her claim denied by filing suit. *Id.,* page 446.

**Once the claimant "... deems a claim denied by filing suit** or by taking some other action, **the administrative settlement process has come to an end.** As such, all of the legal consequences that accompany administrative exhaustion (*i.e.,* triggering a statute of limitations) apply. It is therefore wrong to characterize a procedure that provides the FTCA claimant with total control of her legal situation as somehow brow-beating the FTCA claimant in an inequitable manner." *Id.,* Ugo Colello, *Op. cit.,* pages 451–452. (Emphasis added).

Therefore, the administrative Claims 11–37, filed between June 1, 2009 and October 9, 2010, as well as the administrative claims filed after the filing of the instant action on November 25, 2009, in excess of fifty (50) are also barred.

D. *Summary of the Administrative Claims.*

Claims 1–3 are time-barred, as these three claims were filed on the same date, that is, November 14, 2008, and amended on November 24–25, 2008. Hence, the six-month period provided by 28 U.S.C. § 2675(a), elapsed on or about May 24, 2009. In the instant case, the DVA requested an extension of time of four months to complete the administrative investigation and provide a final decision on the claims. *See* letters dated May 13, 2009 to Mr. Daniel Rosario González, requesting the extension of time, Docket No. 157–2. The four months requested would have elapsed on or about October 2009. Claimant did not appeal the claims "deemed denied" instead Mr. Daniel Rosario filed the instant action on November 25, 2009. From the date of the filing of the district court action, the DVA is deprived of jurisdiction. *See* 28 C.F.R. § 14.2(c), "a claim may be amended by the claimant at any time prior to final agency action or prior to the exercise of the claimant's option to file suit after six months." *See also* Docket

entries No. 157–2 (Summary of Claims); 157–6 and 157–8.

Claims 4–6 are time-barred, as these three claims were filed on the same date, that is, November 18, 2008. Hence, the six-month period provided by 28 U.S.C. § 2675(a), elapsed on or about May 18, 2009. In the instant case, the DVA requested an extension of time of four months to complete the administrative investigation and provide a final decision on the claims. *See* letters dated May 13, 2009 to Mr. Daniel Rosario González, requesting the extension of time, Docket No. 157–2. In the instant case, the DVA requested an extension of time of four months to complete the administrative investigation and provide a final decision on the claims. *See* letters dated May 13, 2009 to Mr. Daniel Rosario González, requesting the extension of time, Docket No. 157–2. The four months requested would have elapsed on or about October 2009. Claimant did not appeal the claims "deemed denied" instead Mr. Daniel Rosario filed the instant action on November 25, 2009. From the date of the filing of the district court action, the DVA is deprived of jurisdiction. *See* 28 C.F.R. § 14.2(c), "a claim may be amended by the claimant at any time prior to final agency action or prior to the exercise of the claimant's option to file suit after six months." *See also* Docket entries No. 157–2 (Summary of Claims); 157–6 and 157–8.

Claims 7–32 are time-barred by the filing of Claim 33, filed on October 26, 2009, to amend Claims 1–3, 11, 13, 15–19 and 20–29. By filing the instant action on November 25, 2009, plaintiff deprived the agency of jurisdiction to entertain the administrative claims pending. "Amended Claim 33 restarted the administrative consideration period of 6–months until April 26, 2010 and by this action the plaintiffs deprived the court from subject matter jurisdiction." *See* Docket No. 155–2, page 13. "Therefore, suit was barred during pendency of claims." *Id.* "Since the administrative exhaustion requirement is jurisdictional, a prematurely-filed suit is subject to dismissal even if the issue is first raised on appeal." *Estate of Barrett v. United States*, 462 F.3d 28, 38 (1st Cir. 2006). *See* Docket No. 155–2, page 13. "When plaintiffs opted to file the lawsuit on November 25, 2009, the agency lost its authority to consider them at the administrative stage." *Id.*

All claims (on or about 73) filed after November 25, 2009 are barred, as the agency is deprived of jurisdiction to entertain any claim after a legal proceeding has been filed in the district court. *See* Docket No. 157–11, and 157–6 and 157–8.

Hence, for the reasons set forth above, the Court finds that it lacks subject matter jurisdiction to entertain the above claims, as follows:

Claims No. 1–6: are time-barred.

Claims No. 7–32: are time-barred, as they were amended by Claim 33 which was filed on October 26, 2009. The Amended Claim 33 is barred by the filing of the instant action on November 25, 2009, which deprived the agency of jurisdiction to entertain the administrative claims pending.

All claims filed after November 25, 2009 (on or about 73 claims) are barred by the filing of the instant action.

In sum, the Court finds that it lacks subject matter jurisdiction to entertain all the administrative claims filed by plaintiffs, as plaintiffs failed to exhaust the administrative remedies provided by 28 U.S.C. § 2675. Hence, all the administrative claims filed by the plaintiffs are denied. "The First Circuit has rejected the argument that an FTCA action should be stayed while a plaintiff pursues his reme-

dies under the FTCA." *Gregory v. Mitchell,* 634 F.2d 199, 204 (5th Cir.1981); *Acosta v. United States Marshals Service,* 445 F.3d 509, 513–14 (1st Cir.2006). *Id. See also Román–Cancel v. United States,* 613 F.3d 37 (1st Cir.2010). "The court may not hold the case in abeyance while a claim is presented to the agency because where a court lacks jurisdiction it cannot retain jurisdiction." *Id. See* Docket No. 155–2, page 14.

Other allegations referring to co-defendants, Servicios de Salud en el Hogar y Hospicio San Lucas, Inc. and Clinical Medical Services, which are not VA employees and/or federal entities, are not covered under the FTCA. Hence, the time to file the tort action against these entities and/or individuals in state court is one year after the underlying damage or the negligence occurs, *see* 31 L.P.R.A. §§ 5141, 5142.

### E. *Loss of Veterans' Benefits.*

 In relation to the alleged loss of benefits, these are excepted from the FTCA by the discretionary function.

DVA officials who render decisions concerning VA benefits are required to exercise their judgment and as such, their actions fall within the discretionary function exception to the FTCA. The "DVA" was performing a discretionary function or duty when the veteran received the benefits rating decision. Therefore, all claims related to loss of benefits are barred. *See Report of Compensation and Benefits,* Docket entries No. 157–4, 157–5 and 157–7, for the benefits that were awarded to "the veteran." Docket No. 157–5 shows in the first columns the date of filing claims for benefits and compensation. It shows five (5) claims from 6/26/1974 to 1/16/2008. The last claim was for special monthly compensation and it was decided on 7/28/2008 and notified on 8/1/2008. Veteran David Rosario Rosado was granted 100% for permanent tracheostomy, 60% for post above the knee amputation and congestive heart failure, the previous rating of 30% for arterial hypertension and proteinuria was increased to 80%. DEA granted; automobile and adaptive equipment as well as specially adapted housing established; special monthly compensation (SMC) retroactively granted to November 13, 2007.

Therefore, those claims alleging loss of benefits must be summarily dismissed since there is no FTCA jurisdiction. In the alternative, if we apply the borrowing principle recommended by Ugo Colello for the computation of the limitation period for deemed denied claims, those claims would be time barred. *See* the *Analysis of Claims,* Docket No. 157–12.

 Plaintiffs further argue open challenges to alleged denial or determination of the "veteran" benefits by DVA's employees intertwined with allegations of constitutional rights violations. Any challenge to determination on veteran benefits must be dismissed for lack of subject matter jurisdiction.

There is a statutory prohibition on judicial review on allegedly improper benefit determination or disability ratings by the DVA. 38 U.S.C. § 511(a) (formerly 38 U.S.C. § 211(a)). *See Menéndez v. U.S.,* 67 F.Supp.2d 42, 46 (D.P.R.1999). When enacting the Veterans Judicial Review Act, Congress established a multi-tiered framework for the adjudication of claims regarding veterans benefits. Citing *Beamon v. Brown,* 125 F.3d 965, 967 (6th Cir.1997). The Court further found that judicial review over decisions of the Court of Veterans Appeals reside in the Court of Appeals for the Federal Circuit. *Id.* at 45–46, citing 38 U.S.C. § 7252(a). The Court in *Menéndez, supra,* also recognized court interpretations of § 511(a) precluding from

review Veterans Administration determinations of benefit awards or disability ratings. *Id.* at 46, citing *Sugrue v. Derwinski,* 808 F.Supp. 946, 949 (E.D.N.Y.1992). "They have held that a plaintiff may not circumvent the bar on judicial review established by § 211, and subsequently § 511(a), by cloaking his claims regarding denial of benefits in the garb of constitutional or other statutory violations. They clearly establish that **section 211(a) precludes federal courts from hearing claims—even if draped in constitutional claims,** seeking a particular type or level of medical care." *Id.* at 46. (Emphasis ours, internal citations omitted). *See Price v. United States,* 228 F.3d 420, 421 (D.C.Cir.2000)(holding that "[t]he exclusive avenue for redress of veterans' benefits determinations is appeal to the Court of Veterans Appeals and from there to the United States Court of Appeals for the Federal Circuit").

Plaintiffs' claims to challenge determinations of denial of veteran benefits related to the "veteran" cloaked as a constitutional claim or as a benefit claim are barred by sovereign immunity, and by the provisions of 38 U.S.C. § 511(a). Congress' reasons for the enactment of § 211(a) and then § 511(a) outlined by the Supreme Court in *Johnson v. Robison,* 415 U.S. 361, 372, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), apply with full force in this case: "[f]irst the interpretation would lead to an inevitable increase in litigation with consequent burdens upon the courts and the VA" and "[s]econd, Congress was concerned that the judicial interpretation of VA policy." *Johnson,* 415 U.S. at 372, 94 S.Ct. 1160. A plaintiff may not disguise his claims regarding denial of benefits in the garb of

constitutional or other statutory violations. *Menéndez,* 67 F.Supp.2d at 46.

■■■ The United States has not waived its sovereign immunity as to review of DVA decisions or procedures by any court other than the United States Court of Appeals for Veterans Claims (Veterans Court) [8], the United States Court of Appeals for the Federal Circuit, and the United States Supreme Court. *In re Russell,* 155 F.3d 1012, 1013 (8th Cir.1998).

VA decisions under laws affecting benefits are subject to appeal within the VJRA scheme. Such appeals are taken first to the Board of Veterans' Appeals, an appellate body within VA, and are thereafter within the "exclusive jurisdiction" of the Veterans Court. 38 U.S.C. §§ 511(a), 7104(a), 7252(a). Congress has also authorized direct challenges to VA actions under 5 U.S.C. §§ 552(a)(1) or 553, including VA rules, interpretations, policy statements, and procedures, but has provided that such actions may be brought only in the Federal Circuit. 38 U.S.C. § 502. Section 511(a) of Title 38 precludes review of any VA decision under a law that affects the provision of benefits by VA, except as provided by sections 502 and 7252, or with respect to certain insurance and housing loan matters. Because Title 38 provides an adequate and exclusive remedy for challenges to any "final agency action," whether they involve adjudication, rule-making, or general policies and procedures, the APA provides no independent waiver of sovereign immunity.

■■■ The Veterans Court has broad power to decide constitutional matters, to compel action unlawfully withheld or unreasonably delayed, and to issue writs of

---

**8.** The Court formerly known as the United States Court of Veterans Appeals has been redesignated the United States Court of Appeals for Veterans Claims, effective March 1, 1999. Veterans Programs Enhancement Act of 1998, Pub.L. No. 105–368, §§ 511(a) and 513, 112 Stat. 3315, 3341, 3342.

mandamus directing action by VA. 38 U.S.C. § 7261(a); *Bates v. Nicholson,* 398 F.3d 1355, 1359 (Fed.Cir.2005). As the Sixth Circuit held in *Beamon,* the fact that the Veterans Court may review only individual claims, as distinguished from class actions or suits on behalf of organizations, does not render that process inadequate. *Beamon,* 125 F.3d at 968–70. A process providing for case-by-case relief is adequate even if it is "more arduous, and less effective in providing systemic relief" than other forms of action. *Women's Equity Action League v. Cavazos,* 906 F.2d 742, 751 (D.C.Cir.1990). Further, where a special review procedure is available to members of an organization, it is irrelevant that the organization itself may be unable to use that procedure to vindicate its members' rights, because "the statutes that create the special review channel adequately protect those rights." *Shalala v. Illinois Council on Long Term Care,* 529 U.S. 1, 24, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000). Finally, although the Veterans Court does not entertain class actions, its decisions carry precedential weight, which the Veterans Court may enforce in similar cases. *Tobler v. Derwinski,* 2 Vet.App. 8, 11–12 (1991).

■ Plaintiffs cannot circumvent the exclusive Title 38 procedures or the restrictions of 5 U.S.C. § 704 by purporting to challenge systemic defects in VA programs or practices as distinguished from discrete VA actions or decisions. To the extent plaintiffs are not challenging concrete VA rules or decisions on individual claims, but rather are broadly seeking improvements to programs they do not like, their claims do not satisfy the "final agency action" requirement of the APA's waiver of sovereign immunity under 5 U.S.C. § 704. As the Supreme Court has repeatedly held, plaintiffs simply "cannot seek wholesale improvement of this program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made. Under the terms of the APA, respondent must direct its attack against some particular agency action that causes it harm." *Norton v. Southern Utah Wilderness Alliance,* 542 U.S. 55, 64, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004) (quoting *Lujan v. Wildlife Federation,* 497 U.S. 871, 891, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)) (emphasis in original).

■ In the leading case interpreting the statute prior to its amendment in Pub.L. No. 100–687, *Johnson v. Robison,* 415 U.S. at 369–73, 94 S.Ct. 1160, the Supreme Court recognized Congress' twofold purpose in enacting what is now section 511. That purpose is, first, to ensure that veterans' benefit claims will not burden the courts and VA with expensive and time-consuming litigation and, second, to ensure that the technical and complex determinations and applications of VA policy regarding such claims will be adequately and uniformly made. The legislative history of the statute demonstrates that "Congress intends to exclude from judicial review all determinations with respect to noncontractual benefits provided for veterans and their dependents and survivors." H.R.Rep. No. 1166, 91st Cong., 2d Sess. 11, reprinted in 1970 U.S.C.C.A.N. 3723, 3731.

The statute barred district-court consideration of individual claims for veterans' benefits, *e.g., Tietjen v. United States Veterans Admin.,* 884 F.2d 514 (9th Cir.1989); *Rosen v. Walters,* 719 F.2d 1422 (9th Cir. 1983); *Demarest v. United States,* 718 F.2d 964 (9th Cir.1983); *de Rodulfa v. United States,* 461 F.2d 1240 (D.C.Cir. 1972); *Milliken v. Gleason,* 332 F.2d 122 (1st Cir.1964). However, prior to passage of the VJRA, a few judicially created ex-

ceptions to the judicial-review prohibition were recognized. Such exceptions included challenges to the constitutionality of veterans' benefit legislation, *e.g., Johnson v. Robison*, 415 U.S. 361, 366–74, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974) challenges to the authority of the Administrator (now Secretary) of Veterans Affairs to promulgate regulations, *e.g., Wayne State Univ. v. Cleland*, 590 F.2d 627 (6th Cir.1978), and suits asserting that a VA regulation violated a statute not primarily administered by VA, *e.g., Traynor v. Turnage*, 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988). Another line of cases, represented by *Greenwood v. United States*, 858 F.2d 1056 (5th Cir.1988), permitted review of VA benefit decisions in certain situations where VA affirmatively sought to recover funds. *But compare New York v. Eadarso*, 946 F.Supp. 240, 242–43 (E.D.N.Y.1996) (distinguishing this line of cases from action seeking reimbursement from VA for cost of medical treatment) [9].

The VJRA, enacted on November 18, 1988, provided a limited waiver of sovereign immunity for lawsuits seeking review of VA benefit decisions. Subject to certain stated limitations, the VJRA vests exclusive jurisdiction in the Veterans Court to review such decisions. See 38 U.S.C. ch. 72.[10]

In *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir.1994), *cert. denied*, 515 U.S. 1102, 115 S.Ct. 2245, 132 L.Ed.2d 254 (1995), the Second Circuit stated that courts do not acquire jurisdiction over challenges to VA benefit determinations merely because the challenges are "cloaked in constitutional terms." The court went on to state that neither the Privacy Act, nor the Freedom of Information Act, may be used as "a rhetorical cover to attack VA benefits determinations." *Id.*

A constitutional challenge to veterans benefit legislation has been permitted in a district court under the VJRA. *Disabled Am. Veterans v. United States Dep't of Veterans Affairs*, 962 F.2d 136, 140 (2d Cir.1992) (preclusion-of-review statute does not deprive district courts of jurisdiction to hear facial challenges to legislation affecting veterans' benefits).[11] However, where a plaintiff does not chal-

---

**9.** One Federal circuit further held that the preclusion of-review statute did not bar a district court from hearing claims that VA procedures violated due process. *Marozsan v. United States*, 852 F.2d 1469 (7th Cir.1988) (en banc). However, district courts within the Seventh Circuit have noted that the subsequent enactment of the VJRA effectively overturned that holding. *See Murrhee v. Principi*, 364 F.Supp.2d 782, 789 (C.D.Ill.2005) (stating that the Maroszan holding "does not apply" to current 38 U.S.C. § 511(a) and that district courts retain jurisdiction only over "facial constitutional challenge[s] to the veterans' benefits statutes themselves"); *McCulley v. United States Dep't of Veterans Affairs*, 851 F.Supp. 1271, 1282 (E.D.Wis.1994) (after enactment of the VJRA, "any attempt in *Marozsan* to grant district courts broadbased power to hear non-facial constitutional challenges to VA benefits decisions appears outmoded.").

**10.** Pursuant to 38 U.S.C. § 511(a), the Secretary of Veterans Affairs is responsible for de-

ciding all questions concerning the provision of benefits to veterans, their dependents, or their survivors. An appeal from the Secretary's decision concerning benefits lies with the Board of Veterans Appeals, which is the division within VA responsible for deciding appeals from decisions on claims for veterans benefits. 38 U.S.C. § 7104(a); 38 C.F.R. § 20.101(a). The Board of Veterans Appeals decision may be appealed by the claimant to the Veterans Court, pursuant to 38 U.S.C. § 7252(a), and then, under certain circumstances, to the United States Court of Appeals for the Federal Circuit, pursuant to 38 U.S.C. §§ 7252(c) 7292.

**11.** *See also Zuspann v. Brown*, 60 F.3d 1156, 1158 (5th Cir.1995) (in determining district court jurisdiction, only one question remains after the passage of the VJRA, "whether the plaintiff is alleging a facial attack on the constitutionality of an act of Congress, or whether the plaintiff is challenging the VA's deci-

lenge the constitutional validity of any statute, but only raises claims arising out of VA's decision on a benefit matter, such claims may only be pursued through the Veterans Court. *See Zuspann v. Brown,* 60 F.3d 1156, 1158–60 (5th Cir.1995); *Sugrue,* 26 F.3d at 11; *Menéndez v. United States,* 67 F.Supp.2d at 47 (benefit claims can only be reviewed through the mechanism established in the VJRA); *Eadarso,* 946 F.Supp. at 244 (constitutional claim against statute, "as applied," no facial challenge); *Beamon,* 125 F.3d at 972–74.

 Moreover, to the extent that plaintiffs seek monetary relief for alleged violations of constitutional rights, the Federal courts have consistently refused to countenance damage actions against the Government based on constitutional grounds.

 Finally allegations of libel, constitutional violations and determinations of veterans benefits fall out of the scope of the FTCA, and are not actionable against the United States.

### F. *Plaintiff Juan Vélez Padilla's Standing to Sue.*

Plaintiff Juan Vélez–Padilla is the "only friend" of veteran David Rosario. *See Complaint,* Docket No. 1, prayer for relief at page 17. In plaintiffs' response to the United States' motion for summary judgment, Docket No. 160, at page 10, they stated: "Juan Vélez Padilla has never waived his claims. Moreover, Juan Vélez Padilla has cause of action under Puerto Rico law for wrongful death because he was a close relative of David Rosario Rosado, hence, having action for damages."

On November 18, 2008, Juan Vélez Padilla filed administrative claim number six (6) claiming $66,600,000:00 in damages for assisting and grooming the veteran for 99 days prior to his demise on August 5, 2008. *See* Docket No. 157–4, page 2 of the Summary of Claims. The Court has reviewed the *Complaint* and Juan Vélez–Padilla did not include a specific allegation for his claim. The Complaint just states in the prayer for relief:

> Plaintiffs, Daniel Rosario González, surviving son of veteran David Rosario Rosado, and **Juan Vélez Padilla, only friend of veteran and son** sustained pecuniary loss, mental anguish, physical and emotional pain and suffering, loss of society, loss of companionship, loss of comfort, loss of protection, loss of paternal care, loss of attention, loss of advice, loss of training, loss of counsel loss of guidance, loss of income, loss of friendship, and permanent physical bodily injuries. (Emphasis added).

 Under the FTCA the United States shall be liable if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred. 28 U.S.C. §§ 1346(b) and 2674.

The controlling case in the Commonwealth of Puerto Rico is *Viuda de Delgado v. Boston Ins. Co.,* 101 D.P.R. 598, 602 (1973), 1 P.R. Offic. Trans. 823 holding that only heirs of a deceased person has an action for damages.

> The right of Ramón Delgado, original victim and appellants' predecessor, to claim for his serious damages against appellee, is a property privately owned,FN5 **transmitted by his death to his heirs and claimable by the latter** as a part which it is of their legal inheritance, reason why appellants have an unquestionable juridical and economical interest in the action raised.

sion to deny him benefits"). *But see Hall v. U.S. Department of Veterans' Affairs,* 85 F.3d 532, 534 (11th Cir.1996) (in light of the VJRA, the "vitality" of the holding in *Robison* con-

cerning the jurisdiction of the district courts to entertain facial constitutional challenges to veterans' benefit legislation is "debatable").

FN 5 Alfonso L. García Martínez, *Reconocimiento de la Acción Hereditaria por muerte ilegal*, 27 Rec. C. Abo. P.R., 463 y sigs. (1966–67). (Emphasis added).

██ Plaintiffs have failed to properly pled in its opposition to summary judgment whether indeed plaintiff Vélez has standing to seek damages. The simple conclusory allegation that Juan Vélez Padilla was a close relative of David Rosario Rosado is a vague and unsupported allegation, subject to dismissal under the plausibility standard as set forth in *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Moreover, from the allegations of Daniel Rosario–González in Civil Case 08–1837(CCC), it appears that the heirs of veteran David Rosario–Rosado are Wilfredo, Iván, Edwin and Daniel, all with the last surname Rosario.

In view of the foregoing, the claim of Juan Vélez Padilla is hereby dismissed with prejudice, for failure to show that indeed Mr. Vélez Padilla met the threshold of being a heir pursuant to the Puerto Rico law.

### G. *The Consolidated Cases.*

The Court is cognizant that the instant case was consolidated with Civil No. 12–1201 and Civil No. 12–1208. *See Order* of July 12, 2012, Docket No. 404. These cases stem from the same set of facts, that is, the passing of veteran David Rosario Rosado. Plaintiff Daniel Rosario is requesting the same remedies in all the consolidated actions, including an excessive amount of damages. Based on the instant *Opinion and Order*, the Court hereby denies the remedies sought by plaintiff Daniel Rosario in the consolidated actions, Civil No. 12–1201 and Civil No. 12–1208, as being moot and already ruled upon in the instant case.

### H. *Constitutional and Civil Rights Alleged Violations.*

Plaintiffs allege in most if not in all of their pleadings several constitutional violations, as well as civil rights violations. None of the alleged violations are supported in the record nor are they described with specificity in order to place the Court in a position to make a determination. Naked and bared general conclusory allegations as to violations of constitutional and/or civil rights are insufficient to warrant a remedy. *See Bell Atlantic Corporation, et al. v. Twombly, et al.*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (May 21, 2007). In *Twombly*, 550 U.S. at 555 and 570, 127 S.Ct. 1955, the Court held:

**Factual allegations must be enough to raise a right to relief above the speculative level,** *see* 5 C. Wright & Miller, *Federal Practice and Procedure* § 1216, pp. 235–236 (3d ed.2004).

. . .

Here, in contrast, we do not require heightened fact pleading of specifics, **but only enough facts to state a claim to relief that is plausible on its face.** Because the plaintiffs here have not nudged their claims across the line from **conceivable to plausible,** their complaint must be dismissed. (Emphasis ours).

In any event, these constitutional and civil rights allegations are not actionable against the United States except as provided in the Federal Tort Claims Act.

### I. *A Final Note.*

The Court notes that, in the instant case, the plaintiffs are requesting the entry of a declaratory judgment and the award in excess of $4,000,000,000,000.00 in damages plus costs and interest, and the reasonable amount of not less than $4,000,000,000,000.00 in compensatory damages. *See Complaint*, Docket No. 1, page 18. The Court simply lacks the pow-

er to award said amount for damages, particularly when it is well known that the current deficit of the federal government is somewhat on or about $15 Trillions. In addition, the FTCA is a legal statute to seek a remedy against the federal government, as opposed to private entities, *albeit* with certain limitations. 28 U.S.C. § 2674. *See also United States v. Mitchell, et al.,* 463 U.S. 206, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *Nuclear Transport & Storage, Inc.,* 890 F.2d 1348 (6th Cir.1989); *Lotton v. United States,* 2012 WL 2370446 (E.D.Kentucky, June 21, 2012) (plaintiff claimed "trillions of dollars in damages"); *Ajuluchuku v. Bank of America Corporation, et al.,* 2007 WL 952015 (W.D.N.C., March 27, 2007) (plaintiff claimed "trillions of dollars in compensatory and punitive damages").[12]

The Court further notes that plaintiff Daniel Rosario is also seeking an excessive amount of damages under the other consolidated cases, to wit, Civil No. 12–1201 and Civil No. 12–1208. In Civil No. 12–1201, plaintiff is seeking $500,000.00 for damages, plus costs and interest, and $500,000.00 for compensatory damages. *See Complaint,* Docket No. 2, Civil No. 12–1201. In Civil No. 12–1208, plaintiff Daniel Rosario is seeking $55,000,000,000,000.00 for damages, plus costs and interest, as well as $55,000,000,000,000.00 for compensatory damages. *See Complaint,* Docket No. 2, Civil No. 12–1208. *But see also,* a motion requesting the entry of a declaratory judgment, Docket No. 3, Civil No. 12–1208, wherein plaintiff Daniel Rosario seeks damages in the amount of $55,000,000,000,000.00 plus costs and inter-

est, and $55,000,000,000,000.00 for compensatory damages.

**Conclusion**

For the reasons set forth above, the Government's *Motion for Summary Judgment,* Docket No. 155, is GRANTED, and this case is dismissed with prejudice. For the reasons set forth in this *Opinion and Order,* the consolidated cases, Civil No. 12–1201 and Civil No. 12–1208 are hereby dismissed with prejudice. The Clerk will close all pending motions based on the entry of this *Opinion and Order.* Judgment is to be entered accordingly, closing the following cases: Civil No. 09–2200, Civil No. 12–1201, and Civil No. 12–1208.

IT IS SO ORDERED.

---

12. On or about January 30, 2012, Ms. Fausat Ogunbayo filed suit against the Administration for Children's Services of the City of New York ("ACS"), seeking damages in the amount of $900 Trillions, claiming a violation of her civil rights when the ACS removed her children from her home, as the agency deemed plaintiff as mentally incapable to caring for her children. Case No. 2012–00384 is pending before the Supreme Court of the State of New York, Appellate Division: Second Judicial Department, at the time of this writing.